Ricardo DE LA PAZ, Appellant,

v.

The STATE of Texas, Appellee.

No. 08–92–00444–CR.

Court of Appeals of Texas, El Paso.

April 13, 1995.

Discretionary Review Refused Sept. 13, 1995.

M. Clara Hernandez, El Paso County Defender, El Paso, for De La Paz, appellant.

Jaime E. Esparza, Dist. Atty., El Paso, for State/appellee.

Before BARAJAS, C.J., and LARSEN and McCOLLUM, JJ.

## OPINION

BARAJAS, Chief Justice.

This is an appeal from a conviction for the offense of possession of heroin, enhanced by the allegation of two prior felony convictions. The jury, upon finding Appellant guilty, assessed punishment at 60 years' confinement in the Institutional Division of the Texas Department of Criminal Justice. We affirm in part, reverse in part, and remand this cause to the trial court for new sentencing proceedings.

## I. SUMMARY OF THE EVIDENCE

The record in the instant case reveals that on Sunday, June 4, 1989, at approximately 9:00 a.m., Joseph Anthony Barragan, an officer with the El Paso Police Department, observed a parked vehicle in the 4500 block of Rosa Street in El Paso, Texas. The area, primarily a business district, is known for its heavy traffic in narcotics. In the vehicle were two male occupants, both of whom had passed out. At the time of the observation, all businesses in the area were closed. Officer Barragan approached the vehicle to ensure that everything was all right.

Officer Barragan noticed that Appellant, who was located in the driver's seat of the vehicle, had blood coming from his arm from fresh "track marks".[1] The passenger likewise exhibited fresh "track marks" and was holding both a syringe that Officer Barragan believed to contain heroin and tissue with blood on it. Officer Barragan additionally observed a "cooker",[2] with residue inside it located on the console immediately between Appellant and the passenger.

---

1. "Track marks" are a pattern of scars appearing as dots, resulting from the introduction of a hypodermic needle repeatedly into the skin. They are often associated with intravenous drug abuse.

2. A "cooker" is a bottle cap with a cotton ball in it that is utilized in drug use.

Officer Barragan called for backup. When the backup arrived, Appellant and the passenger were removed from the car and placed under arrest. At the time of their arrest, both Appellant and his passenger appeared incoherent and their pupils were dilated. Both officers then returned to the vehicle and found what appeared to be additional heroin on the floorboard.

## II. *DISCUSSION*

█ In Point of Error No. One, Appellant complains that the trial court erred in denying his Motion to Suppress the heroin which was discovered in his vehicle as a result of the inventory search. The trial judge is the sole and exclusive trier of facts at a hearing on a motion to suppress. *Romero v. State*, 800 S.W.2d 539, 543 (Tex.Crim. App.1990); *Cannon v. State*, 691 S.W.2d 664, 673 (Tex.Crim.App.1985), *cert. denied*, 474 U.S. 1110, 106 S.Ct. 897, 88 L.Ed.2d 931 (1986); *Hawkins v. State*, 628 S.W.2d 71, 75 (Tex.Crim.App.1982); *Green v. State*, 615 S.W.2d 700, 707 (Tex.Crim.App.1980), *cert. denied*, 454 U.S. 952, 102 S.Ct. 490, 70 L.Ed.2d 258 (1981). On appeal, this Court will not engage in its own factual review but rather, will decide whether the record supports the trial judge's findings. The totality of the circumstances are considered in determining whether the trial court's findings are supported by the record, and the findings will not be disturbed absent a clear abuse of discretion. *Dancy v. State*, 728 S.W.2d 772, 777 (Tex.Crim.App.1987), *cert. denied*, 484 U.S. 975, 108 S.Ct. 485, 98 L.Ed.2d 484 (1987).

█ When a defendant seeks to suppress evidence on the basis of a Fourth Amendment violation, the burden of proof is initially on the defendant. *Russell v. State*, 717 S.W.2d 7, 9 (Tex.Crim.App.1986); *Mattei v. State*, 455 S.W.2d 761, 765–66 (Tex.Crim. App.1970); *see also State v. Wood*, 828 S.W.2d 471, 474 (Tex.App.—El Paso 1992, no pet.). The defendant must defeat the presumption of proper police conduct and shift the burden of proof to the State. *Russell*, 717 S.W.2d at 9. A defendant meets this burden by establishing that a search or seizure occurred without a warrant. *Id.*

█ A peace officer may arrest an offender without a warrant for any offense committed in his presence or within his view. TEX.CODE CRIM.PROC.ANN. art. 14.01 (Vernon 1987). Furthermore, any peace officer may arrest, without a warrant, persons found in suspicious places and under circumstances which reasonably show that such persons have been guilty of some felony or breach of the peace. TEX.CODE CRIM.PROC.ANN. art. 14.03 (Vernon 1987). An arrest, whether made with or without a warrant must nonetheless be based upon probable cause. *Campbell v. State*, 644 S.W.2d 154, 158 (Tex. App.—Austin 1982), *aff'd*, 647 S.W.2d 660 (Tex.Crim.App.1983). In that regard, the State has the burden to prove the existence of probable cause to justify a warrantless arrest or search. *Torres v. State*, 868 S.W.2d 798, 801 (Tex.Crim.App.1993). In Texas, the courts look at the "totality of the circumstances" for determining probable cause for a warrantless search and seizure. *Torres v. State*, 868 S.W.2d at 798, 801; *Eisenhauer v. State*, 754 S.W.2d 159, 164 (Tex.Crim.App. 1988), *cert. denied*, 488 U.S. 848, 109 S.Ct. 127, 102 L.Ed.2d 101 (1988). Probable cause exists where the facts and circumstances within the officer's knowledge and of which he has reasonably trustworthy information are sufficient in themselves to warrant a person of reasonable caution in the belief that a particular person has committed or is committing an offense. *Torres*, 868 S.W.2d at 801; *Amores v. State*, 816 S.W.2d 407, 413 (Tex.Crim.App.1991); *Woodward v. State*, 668 S.W.2d 337, 344 (Tex.Crim.App.1982) (opinion on rehearing), *cert. denied*, 469 U.S. 1181, 105 S.Ct. 939, 83 L.Ed.2d 952 (1985). In reviewing a warrantless arrest to determine the existence of probable cause, we look to the facts known to the officers at the time of the arrest. *Torres*, 868 S.W.2d at 801.

█ As noted earlier, Officer Barragan is a narcotics officer with the El Paso police department who then held the rank of Detective. The facts known to Officer Barragan at the time of Appellant's arrest were as follows: (1) Appellant and his passenger were "passed out" in a car on Sunday morning in a business district when all the businesses were closed; (2) fresh "track marks"

were observed on both Appellant's and his passenger's arms; (3) the passenger held a partially "shot" syringe containing what Officer Barragan believed to be heroin; (4) a cap with cotton, known to Officer Barragan from his experience to be a "cooker", was on the console immediately between Appellant and his passenger; and (5) upon removal from the car, Appellant and the passenger were difficult to rouse, incoherent and their pupils were dilated. Given the above, we find the facts sufficient to provide Officer Barragan with probable cause to arrest Appellant. *See Pringle v. State,* 732 S.W.2d 363, 367 (Tex. App.—Dallas 1987, pet. ref'd). Because the arrest was justified under both Articles 14.01 and 14.03, we find that the search of the vehicle incident to that arrest was proper.[3] *Lunde v. State,* 736 S.W.2d 665, 667–668 (Tex.Crim.App.1987). Consequently, we find that the trial court did not abuse its discretion in denying Appellant's motion to suppress. Appellant's Point of Error No. One is overruled.

In Point of Error No. Two, Appellant complains that the trial court erred in failing to grant a jury instruction pursuant to Article 38.23 of the Texas Code of Criminal Procedure on the legality of his arrest. Article 38.23 provides that:

(a) No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case.

In any case where the legal evidence raises an issue hereunder, the jury shall be instructed that if it believes, or has a reasonable doubt, that the evidence was obtained in violation of the provisions of this Article, then and in such event, the jury shall disregard any such evidence so obtained. Tex.Code Crim.Proc.Ann. art. 38.23 (Vernon Supp.1995).

A trial court is required to give an Article 38.23 instruction only if there is a factual dispute as to how evidence was obtained. *Thomas v. State,* 723 S.W.2d 696, 707 (Tex. Crim.App.1986). Absent any such factual dispute, a trial court may properly refuse such a charge. *Murphy v. State,* 640 S.W.2d 297, 299 (Tex.Crim.App.1982).

In the instant case, Appellant argues that the testimony of Blas M. Zarate, the police officer providing backup to Officer Barragan, controverts the testimony of Officer Barragan and thus creates a fact issue as to the lawfulness of Appellant's arrest. We disagree. As noted in the discussion regarding Point of Error No. One, Officer Barragan testified that he observed **from outside the vehicle, prior to Officer Zarate's arrival,** those facts which supported the basis for Appellant's arrest, i.e., that Appellant was "passed out", that he had a "track mark" on his arm, etc.

Officer Zarate, on the other hand, testified that "the track marks were seen after Appellant was pulled from the car" and that before Appellant and the passenger were pulled out of the car, he "really couldn't see the track marks". He further testified that he was not the initial officer on the scene but was merely called in as backup to assist in the arrest. Insofar as Officer Barragan, prior to Officer Zarate's arrival, had already determined that probable cause existed for the Appellant's arrest, proper evaluation of the legality of Appellant's arrest must be based upon the testimony of Officer Barragan and facts known to him at the time the decision to arrest was made.

We note that the record fails to show that Officer Zarate did not state that the arresting officer did not, or could not have seen the track marks prior to pulling Appellant and his passenger out of the vehicle. The fact that Officer Zarate did not see the track marks at the same time that the arresting officer did does not contradict the arresting officer's testimony. To the contrary, it merely provides the facts known by Officer Zarate. Given the above, we do not find that a fact issue was raised as to the legality of

---

**3.** It is of no consequence that the officers classified the search as an inventory. In reviewing instances of search, this Court is not confined to the reasons stated by the officers for conducting the search. *Nickerson v. State,* 645 S.W.2d 888, 890 (Tex.App.—Dallas 1983), *aff'd,* 660 S.W.2d 825 (Tex.Crim.App.1983).

Appellant's arrest. Consequently, Appellant's Point of Error No. Two is overruled.

█ In Point of Error No. Three, Appellant complains that the trial court erred in allowing Officer Barragan to testify as to irrelevant and prejudicial matters. Specifically, Appellant complains that the trial court erred in permitting Officer Barragan to testify that the area in which Appellant was arrested was an area "frequented by drug addicts." All relevant evidence is admissible, unless its probative value is substantially outweighed by the danger of unfair prejudice. TEX.R.CRIM.EVID. 402 and 403. The record clearly establishes that the legality of Appellant's arrest was placed in issue at trial. Insofar as the legality of Appellant's arrest was placed in issue, any testimony relating to the circumstances surrounding Appellant's arrest, specifically the area in which he was arrested, were relevant on the issue of whether or not Officer Barragan had probable cause to arrest. *Terry v. Ohio,* 392 U.S. 1, 24–25, 88 S.Ct. 1868, 1881–82, 20 L.Ed.2d 889 (1968); *Crooks v. State,* 821 S.W.2d 666 (Tex.App.—Houston [14th Dist.] 1991, no pet.).

The fact that the legality of Appellant's arrest was a material issue at trial does not automatically mean, however, that Appellant was entitled to an Article 38.23 instruction regarding the legality of the arrest. Based upon the evidence presented, the trial court correctly determined that a fact issue as to the legality of the stop was not presented and that Officer Barragan's arrest of Appellant was therefore valid as a matter of law. Thus, while evidence as to the circumstances surrounding Appellant's arrest was properly admitted, no instruction on the legality of the stop was required.

Appellant further complains of Officer Barragan's testimony that the needle marks made on Appellant's and the passenger's arms were made by a syringe. Appellant objected to this testimony on the grounds that Officer Barragan was not qualified to testify about such matters. The admissibility of such expert testimony is addressed in Point of Error No. Four and consequently will not be reiterated here.

█ Lastly, Appellant complains of Officer Barragan's testimony that he found some heroin on the dashboard. The relevant exchange occurred as follows:

Witness: I confiscated the syringe and the cooker and also, **after we inventoried the vehicle we also found some heroin on the dashboard.** (Emphasis ours).

Defense: Object to that. He's not a chemist.

Witness: I looked at a black-tarry substance.

Defense: Is that overruled, Judge?

Court: He is retracting his statement, Mr. DeKoatz. Let him finish answering the question.

Witness: I located a black-tarry substance that I believed to be heroin on the dashboard, and also turned that in as evidence.

We note that Appellant failed to object to the statement, as revised by Officer Barragan. Since the offensive comment was retracted and no further objection was made to the Officer's observations, we find that the error, if any, was cured. *Butler v. State,* 769 S.W.2d 234, 241 (Tex.Crim.App.1989) (holding any error in admission of evidence cured when same evidence later admitted without objection). Appellant's Point of Error No. Three is overruled.

█ In Point of Error No. Four, Appellant complains that the trial court erred in allowing Officer Barragan to testify as an expert. Specifically, Appellant objected to the following testimony:

A: This area is known to be frequented by drug addicts. They purchase narcotics in this area. I figure these individuals probably may have **overdosed.** (Emphasis added).

█ In order to preserve a complaint for appellate review the complaining party must present to the trial court a timely request, objection or motion setting out the specific grounds for the ruling he desires the court to make. TEX.R.CRIM.EVID. 103. Furthermore, the basis for complaint at trial must comport with the basis for complaint on appeal, or no error is preserved. *Johnson v. State,* 803

S.W.2d 272, 292 (Tex.Crim.App.1990), *cert. denied,* 501 U.S. 1259, 111 S.Ct. 2914, 115 L.Ed.2d 1078; *Walk v. State,* 841 S.W.2d 430, 435 (Tex.App.—Corpus Christi 1992, pet. ref'd.); *see also Guerrero v. State,* 820 S.W.2d 378, 385 (Tex.App.—Corpus Christi 1991, pet. ref'd.). The record in the instant case demonstrates that Appellant objected to the foregoing testimony on the grounds that it was speculative. On appeal however, Appellant attempts to raise error on the grounds that this testimony constituted impermissible expert testimony. Given the variance between the objection at trial and the grounds of error asserted on appeal, we find that Appellant failed to preserve any error caused by the testimony. TEX.R.APP.P. 52(a). Appellant's Point of Error No. Four is overruled.

In Point of Error No. Five, Appellant claims the trial court erred by refusing his request for a "no-adverse-inference" punishment instruction regarding his failure to testify. Appellant argues the trial court's action abridged the rights guaranteed him by the *Fifth* Amendment to the United States Constitution. We agree.

■ A criminal defendant cannot be compelled to be a witness against himself. U.S. CONST. amend. V, cl. 3. A defendant's right not to testify continues beyond conviction until after a defendant has been sentenced. *Beathard v. State,* 767 S.W.2d 423, 432 (Tex.Crim.App.1989); *Brown v. State,* 617 S.W.2d 234, 237 (Tex.Crim.App.1981). Further, a defendant has a right to a no-adverse-inference instruction, which concerns the fact a defendant elects not to testify, at the punishment stage of a trial. *White v. State,* 779 S.W.2d 809, 828 (Tex.Crim.App. 1989), *cert. denied,* 495 U.S. 962, 110 S.Ct. 2575, 109 L.Ed.2d 757 (1990); *Beathard v. State,* 767 S.W.2d at 432; *Brown v. State,* 617 S.W.2d at 238.

■ We must initially determine whether Appellant either objected to the failure to include a no-adverse-inference instruction or made a proper request to add such an instruction. A defendant waives the right to a no-adverse-inference instruction unless either a request is made to the trial court to add the instruction to its charge at the pun-ishment stage or an objection is made to the omission of the instruction. *See Brown v. State,* 617 S.W.2d at 238.

■ The record shows that Appellant orally requested such an instruction. In ruling on Appellant's request, the trial court referred to the charge given the jury at the guilt-innocence phase of trial, which did include a no-adverse-inference instruction. The charge given the jury at the punishment phase did not include such an instruction. Although not phrased as an objection, we think the oral request sufficient to preserve error, especially since the trial court expressly ruled on it. *See* TEX.CODE CRIM.PROC.ANN. art. 36.15 (Vernon Supp.1995) (deeming dictation of requested instruction to court reporter sufficient to preserve error).

■ Finding error, we must now determine whether such error is reversible. We reverse upon a finding of error, unless we determine beyond a reasonable doubt that the error made no contribution to Appellant's punishment. TEX.R.APP.P. 81(b)(2). Since this is a case of charging error with timely objection, we reverse only if the error was calculated to injure the rights of Appellant, which means there must be some harm to the accused from the error. *See White v. State,* 779 S.W.2d at 828 (citing *Almanza v. State,* 686 S.W.2d 157 (Tex.Crim.App.1984)). We are unable to conclude beyond a reasonable doubt that no harm came to Appellant by the trial court's failure to give the requested instruction.

We begin with a cursory examination of the importance of the right at issue. Although we recently addressed this issue in *Ulloa v. State,* 901 S.W.2d 507 (Tex.App.—El Paso, 1995, pet. filed), which includes a nearly identical discussion, both the importance of the right at issue and, for reasons we shall identify, the facts of the *Ulloa* decision itself merit some repetition.

The Fifth Amendment privilege against compulsory self-incrimination reflects our collective unwillingness to subject those suspected of crime to the cruel trilemma of self-accusation, perjury, or contempt, our sense of fair play which compels us to require the

government in its contest with the individual to shoulder the entire burden without the benefit of evidence from the defendant's own mouth, our respect for the inviolate private enclave where a private citizen may lead a private life, and our realization that the privilege, while sometimes a shelter to the guilty, is often a protection to the innocent. *Murphy v. Waterfront Comm'n*, 378 U.S. 52, 55, 84 S.Ct. 1594, 1596–97, 12 L.Ed.2d 678 (1964). The Fifth Amendment attempts to secure the foregoing interests by empowering a criminal defendant to elect not to testify, and by prohibiting the State from exacting a price for exercising the privilege. *Griffin v. California*, 380 U.S. 609, 614, 85 S.Ct. 1229, 1233, 14 L.Ed.2d 106 (1965). The omission of a no-adverse-inference punishment instruction attaches such a price to the exercise of the privilege because "the members of a jury, unless instructed otherwise, may well draw adverse inferences from a defendant's silence." *Carter v. Kentucky*, 450 U.S. 288, 301, 101 S.Ct. 1112, 1119, 67 L.Ed.2d 241 (1981). In *Carter*, the United States Supreme Court made clear that a defendant's constitutional right to remain silent is not to be trivialized:

> We have repeatedly recognized that instructing a jury in the basic constitutional principles that govern the administration of criminal justice, is often necessary[4]. Jurors are not experts in legal principles; to function effectively, and justly, they must be accurately instructed in the law.

> Such instructions are perhaps nowhere more important than in the context of the Fifth Amendment privilege against compulsory self-incrimination, since [t]oo many, even those who should be better advised, view this privilege as a shelter for wrongdoers. They too readily assume that those who invoke it are ... guilty of crime.... And, as the Court has stated, we have not yet attained that certitude about the human mind which would justify us in ... a dogmatic assumption that jurors, if properly admonished, neither could nor would heed the instructions of the trial court....

> A trial judge has a powerful tool at his disposal to protect the constitutional privilege—the jury instruction—and he has **an affirmative constitutional obligation** to use that tool when a defendant seeks its employment. No judge can prevent jurors from speculating about why a defendant stands mute in the face of a criminal accusation, but a judge can, and must, if requested to do so, use the unique power of the jury instruction to reduce that speculation to a minimum[5].

> ....

> The freedom of a defendant in a criminal trial to remain silent unless he chooses to speak in the unfettered exercise of his own will is guaranteed by the Fifth Amendment and made applicable to state criminal pro-

4. For want of workable method to distinguish the Supreme Court's footnotes from our own, we here reproduce what the Supreme Court stated in its 19th footnote:

> In *Taylor v. Kentucky*, 436 U.S. 478 [98 S.Ct. 1930, 56 L.Ed.2d 468] ... [ (1978) ], the Court held that the Due Process Clause requires that instructions be given on the presumption of innocence and the lack of evidentiary significance of an indictment. The Court recognized that an instruction on the presumption of innocence has a salutary effect upon lay jurors, and that the ordinary citizen well may draw significant additional guidance from such an instruction. The Court stressed the purging effect of the instruction and the need to protect the accused's constitutional right to be judged solely on the basis of proof adduced at trial. The same can be said, of course, with respect to the privilege of remaining silent. Indeed, the claim is even more compelling here than in *Taylor*, where the dissenting opinion noted that

> "the omission [in Taylor's trial] did not violate a **specific constitutional guarantee, such as the privilege against compulsory self-incrimination**."

*Carter v. Kentucky*, 450 U.S. 288, 302 n. 19, 101 S.Ct. 1112, 1120 n. 19, 67 L.Ed.2d 241 (emphasis added) (citations and internal quotations omitted).

5. For want of workable method to distinguish the Supreme Court's footnotes from our own, we here reproduce what the Supreme Court stated in its 21st footnote:

> The importance of a no-inference instruction is underscored by a recent national public opinion survey conducted for the National Center for State Courts, revealing that 37% of those interviewed believed that it is the responsibility of the accused to prove his innocence. 64 A.B.A.J. 653 (1978).

*Carter v. Kentucky*, 450 U.S. 288, 303 n. 21, 101 S.Ct. 1112, 1120 n. 21, 67 L.Ed.2d 241.

ceedings through the Fourteenth. And the Constitution further guarantees that no adverse inferences are to be drawn from the exercise of that privilege. Just as adverse comment on a defendant's silence cuts down on the privilege by making its assertion costly, the failure to limit the jurors' speculation on the meaning of that silence, when the defendant makes a timely request that a prophylactic instruction be given, exacts an impermissible toll on the full and free exercise of the privilege. Accordingly, we hold that **a state trial judge has the constitutional obligation, upon proper request, to minimize the danger** that the jury will give evidentiary weight to a defendant's failure to testify.

*Carter v. Kentucky*, 450 U.S. at 302–05, 101 S.Ct. at 1121–22 (emphasis added) (footnote, citations, and internal quotations omitted), *quoted in Castaneda v. State*, 852 S.W.2d 291, 298–299 (Tex.App.—San Antonio 1993, no writ) (Chapa, J., dissenting).

In *Brown v. State*, 617 S.W.2d at 234, the Court of Criminal Appeals recognized *Carter's* unequivocal mandate when it stated:

We hold that where a request is made to the trial court to add to its charge at the punishment stage of the trial an instruction on the failure of the defendant to testify, or an objection is made to the omission of such charge, **it is reversible error** if the trial court fails to honor that request or objection because we find that "members of the jury, unless instructed otherwise, may well draw adverse infer-

ences from a defendant's silence," at the punishment phase of the trial, just as they could from the defendant's silence at the guilt-innocence stage of the trial. "No judge can prevent jurors from speculating about why a defendant stands mute ..., but **a judge can, and must,** if requested to do so, use the unique jury instruction to reduce that speculation to a minimum." *See Carter, ....*

*Brown v. State*, 617 S.W.2d at 238 (emphasis added) (quoting *Carter v. Kentucky*, 450 U.S. at 301, 303, 101 S.Ct. at 1119–20, 1120–21). Despite the apparent clarity of the Supreme Court's pronouncement that a state trial court is bound by the federal Constitution to give the jury a no-adverse-inference punishment instruction, and despite the manifestation of its own proper understanding of this requirement and its importance, the Court of Criminal Appeals applied a harmless error analysis to this issue in *White v. State*, 779 S.W.2d at 809.[6] *White* found that the defendant's constitutional rights were trampled by the erroneous omission of the appropriate punishment instruction, yet deemed the error harmless and refused to vindicate his rights with even the benign remedy of new punishment proceedings.

In the instant case, the State concedes the trial court erred in omitting the punishment instruction from the jury charge but relies on *White* to argue the trial court's error was harmless. We find *White* distinguishable because of the facts of the underlying offense

---

**6.** Justice Chapa's dissenting opinion in *Castaneda* thoroughly and accurately traces the anomalous history of harmless error analysis with respect to the omission from a jury charge of a no-adverse-inference instruction. Justice Chapa noted the *Carter* Court expressly declined to hold that such error can never be harmless because the issue was not presented to the Kentucky Supreme Court, and then turned his attention to the odd manner by which the Court of Criminal Appeals came to apply the harmless error rule in this situation, which it did for the first time in *Beathard v. State*, 767 S.W.2d at 423. Referring to *Brown v. State*, 617 S.W.2d at 234, in which the Court of Criminal Appeals followed *Carter* and held that the omission of a no-adverse-inference punishment instruction "is reversible error," Justice Chapa observed:

It is interesting to note that in *Brown*, the Texas Court of Criminal Appeals clearly based

its en banc opinion on what the United States Supreme Court **said** in *Carter*, holding that "where a request is made to the trial court to add to its charge at the punishment stage of the trial an instruction on the failure of defendant to testify, or an objection is made to the omission of such charge, **it is reversible error** if the trial court fails to honor that request or objection" without any mention whatsoever about the harmless error rule. *Brown*, 617 S.W.2d at 238.

However, without actually overruling *Brown*, the Texas Court of Criminal Appeals, in what appears to be an afterthought, applied the harmless error rule for the first time in *Beathard*, ironically basing this action on what the United States Supreme Court **refused to say** in the same *Carter* opinion.

*Castaneda v. State*, 852 S.W.2d at 299–300 n. 4.

and because of the explanation the trial court gave for its decision.

*White* involved a loathsome, violent crime. The defendant intentionally raped Elizabeth St. John, a fragile 72–year–old woman who weighed 92 pounds and suffered from a degenerative disease. He then killed her by strangling her and stabbing her with a screwdriver. In finding the disputed error harmless, the Court of Criminal Appeals focused on the facts of the case, which it thought sufficiently important to recite in some detail:

> At the punishment phase, the State introduced evidence that appellant had strangled and suffocated to death an 80 year old woman in Orlando, Florida, a matter of days before he murdered Elizabeth St. John in Houston. According to a confession introduced at punishment, appellant was hired to do some yard work for the elderly Mae Bailey, who he subsequently choked with his hands and suffocated with a pillow. He then took an antique clock from her house, as well as $25.00, a suitcase full of papers and the victim's 1965 Plymouth Valiant, which he ultimately drove to Houston. Appellant sold the clock to an antique shop. He retained the papers, which included the registration to the Valiant.
>
> Appellant confessed to the murder of Mae Bailey at the same time he confessed to the remarkably similar murder of Elizabeth St. John to law enforcement officials in Myrtle Beach, South Carolina. According to Mitchell Kemp, appellant at that time made no expression of regret for his deeds or remorse for his victims.
>
> The State also introduced reputation for violence evidence from Ron Blazer, the former Chief of Detectives for the City of Lancaster, Ohio, Police Department. Also, detailed evidence that appellant was in the process of committing a burglary of Romondo's restaurant when he was arrested in Myrtle Beach was elicited. This evidence had been excluded by the trial judge at the guilt phase.
>
> Appellant offered no evidence at the punishment phase.

In view of the evidence offered at punishment, coupled with the evidence adduced in the guilt/innocence stage, we cannot say the trial court's failure give the requested charge was calculated to injure the rights of the defendant in this case. Finding that this could not have contributed to the jury's answers to the special issues under the record before us, we conclude he suffered no harm from the omission of the requested charge.

*White v. State,* 779 S.W.2d at 828.

Unlike *White,* the instant case involves only a possessory crime. Appellant is accused of killing no one; no helpless citizen's person was attacked; no one's safety was threatened. Appellant was merely passing a drug-induced stupor when he was discovered, and he did not resist when he was arrested. While the defendant in *White* offered no evidence at the punishment stage, Appellant called two family members as witnesses, who testified that Appellant was a good son and husband and asked for leniency. We think the two punishment witnesses who testified **about** Appellant only raised the jury's expectation to hear similar evidence directly **from** Appellant, which increased the already substantial risk that it would penalize Appellant for his silence. Further, Appellant was sentenced to a term of 60 years' imprisonment, while the available punishment ranged from terms of 25 years to life. Although the defendant in *White* was sentenced to death, there was overwhelming evidence of his guilt and, more importantly, of his brutality and cruelty. We cannot conclude with any degree of certainty that the jury's consideration of Appellant's failure to testify did not result in the assessment of at least a marginally increased sentence, especially since the jury had available to it a range of lesser punishments that spanned 35 years. Because Appellant's offense is merely a crime of possession and because he called two witnesses at the punishment stage of trial, we find *White* does not extinguish a reasonable doubt that Appellant suffered no harm from the omission of a no-adverse-inference punishment instruction[7].

7. Although the State does not cite *Beathard,* its distinguishability is even more apparent. *Beath-*

We place greatest emphasis on the change in harmless error analysis effected by *Harris v. State*, 790 S.W.2d 568 (Tex.Crim.App. 1989), and the significance it imputes to the trial court's stated reason for denying the requested instruction in the instant case. *Harris* states:

> In summary, a reviewing court in applying the harmless error rule should not focus upon the propriety of the outcome of the trial. Instead, an appellate court should be concerned with the integrity of the process leading to the conviction. Consequently, the court should examine the source of the error, the nature of the error, whether or to what extent it was emphasized by the State, and its probable collateral implications. Further, the court should consider how much weight a juror would probably place upon the error. In addition, the Court must also determine **whether declaring the error harmless would encourage the State to repeat it with impunity.** In summary, the reviewing court should focus not on the weight of the other evidence of guilt, but rather on whether the error at issue might possibly have prejudiced the jurors' decision-making; it should ask not whether the jury reached the correct result, but rather whether the jurors were able properly to apply law to facts in order to reach a verdict. Consequently, the reviewing court must focus upon the process and not on the result. In other words, a reviewing court must always examine whether the trial was an essentially fair one. If the error was of a magnitude that it disrupted the jurors' orderly evaluation of the evidence, no matter how overwhelming it might have been, then the conviction is tainted. Again, it is the effect of the error and not the other evidence that must dictate the reviewing court's judgment.

> ... A procedure for reaching this determination should: first, isolate the error and all its effects, using the considerations set out above and any other considerations suggested by the facts of an individual case; and second, ask whether a rational trier of fact might have reached a different result if the error and its effects had not resulted.

*Harris v. State*, 790 S.W.2d at 587–88 (emphasis added). As might be deduced from our alteration to the quotation, the phrase we emphasize has particular relevance to our facts. In it the Court of Criminal Appeals for the first time, as far as we can discern, counsels courts to consider "whether declaring the error harmless would encourage the State to repeat it with impunity." *Id.* at 587. A trial court is at least as capable as the State of denying a criminal defendant his constitutional rights because it can enact what the State can merely urge. We are therefore equally concerned with its errors and the extent to which our decision will lead it to commit similar errors in the future. Thus, the trial court's explanation for its decision is relevant to our harmless error analysis, notwithstanding that the State's attorney did not urge the denial of Appellant's request.

We note that the case at hand was tried in the same court in which *Ulloa* was tried. Both cases were tried before the same judge. In each case, the trial court explained its decision by stating that the jury had already been instructed about the impropriety of holding the defendant's silence against him.[8]

---

*ard* involved the intentional murder of three persons pursuant to a conspiracy that a relative of the victims helped plan. The defendant actually testified during guilt-innocence about "his current and past employment, his educational attainments, his family background, and his lack of any criminal record." *Beathard v. State*, 767 S.W.2d at 433 n. 17. Given the breadth of the defendant's testimony, the Court of Criminal Appeals observed that "we can think of nothing else that [the defendant] could have said during the punishment phase that he had not already said." *Id.* The Court then took care to announce that its decision was "[l]imited to the unusual factual setting of this case...." *Id.* at 433.

8. The trial court was, of course, correct. The trial court also instructed the entire venire to this effect at voir dire. The State relies on these two previous instructions as some evidence that Appellant was not harmed by the omission of the instruction. The *Castaneda* majority places similar weight on voir dire and guilt-innocence no-adverse-inference instructions. *White* and *Beathard* wisely do not.

We think the danger that a jury may draw such an impermissible inference is only increased by

That *Ulloa* involved the same error provides strong reason to think our concern is more than speculative, and proves nearly prophetic the warning that an overzealous application of the harmless error rule in this context would "have the potential of creating a license to deny accuseds their constitutional rights on the hopes that any error would nevertheless be declared harmless." *Castaneda v. State*, 852 S.W.2d at 303 (Chapa, J., dissenting). Were we to contribute to the realization of this potential by deeming the error harmless, we would come perilously close to rendering a no-adverse-inference punishment instruction a mandatory non-requirement. Accordingly, we sustain Appellant's fifth point of error.

■■■ In his eighth point of error Appellant complains that the trial court erred in failing to grant his motion for instructed verdict based upon insufficient evidence. In reviewing the sufficiency of the evidence to support a criminal conviction, we are constrained to view all the evidence in a light most favorable to the verdict to determine whether any rational trier of fact could find the essential elements of the crime as alleged beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2788–89, 61 L.Ed.2d 560 (1979); *Geesa v. State*, 820 S.W.2d 154, 159 (Tex.Crim.App. 1991); *Enriquez v. State*, 826 S.W.2d 191 (Tex.App.—El Paso 1992, no pet.). Our role is not to ascertain whether the evidence establishes guilt beyond a reasonable doubt. *Stoker v. State*, 788 S.W.2d 1, 6 (Tex.Crim. App.1989), *cert. denied*, 498 U.S. 951, 111 S.Ct. 371, 112 L.Ed.2d 333 (1990). Nor do we resolve any conflict of fact or assign credibility to the witnesses, as it was the function of the trier of fact to accept or reject

any, part, or all of any witness's testimony. *See Adelman v. State*, 828 S.W.2d 418, 421 (Tex.Crim.App.1992). Instead, an appellate court's duty is only to determine if both the explicit and implicit findings of the trier of fact are rational by viewing all the evidence admitted at trial in a light most favorable to the verdict. *Id.* at 421–22. In so doing, any inconsistencies in the evidence are resolved in favor of the verdict. *Matson v. State*, 819 S.W.2d 839, 843 (Tex.Crim.App.1991) (quoting *Moreno v. State*, 755 S.W.2d 866, 867 (Tex.Crim.App.1988)).

■■■ A person commits an offense if he "knowingly or intentionally possesses a controlled substance...." Tex.Health & Safety Code Ann. § 481.115(a) (Vernon 1992). Possession is defined as actual care, custody, control or management of the substance. Tex.Health & Safety Code Ann. § 481.002(38) (Vernon 1992). Possession of contraband need not be exclusive and evidence which shows the accused jointly possessed the contraband with another is sufficient. Tex.Health & Safety Code Ann. § 481.002(38); *McGoldrick v. State*, 682 S.W.2d 573, 578 (Tex.Crim.App.1985). However, when the accused is not in exclusive possession of the place where the substance is found, there must be additional independent facts and circumstances that affirmatively link the accused to the contraband in such a manner that it can be concluded he had knowledge of the contraband as well as control over it. *Deshong v. State*, 625 S.W.2d 327, 329 (Tex.Crim.App.1981).

■■■ Factors to be considered in determining whether there was sufficient evidence of possession of a controlled substance include whether: (1) the contraband was in

earlier instructions that it may not do so. In the case at hand, the point was made at voir dire, where potential jurors were instructed not to infer Appellant's guilt from his silence. The jury was properly instructed at guilt-innocence not to consider Appellant's silence, and jurors presumably assiduously avoided even discussing the matter during deliberations. Whether or not they actually avoided doing so, we are confident they were at least conscious of the impropriety of mentioning or considering Appellant's failure to testify.

At long last, punishment deliberations arrive and the cumbersome proscription, which seeks

to prevent what is only a juror's natural inclination, and which has been so much emphasized in earlier proceedings, is conspicuously absent. The rational and attentive juror can draw but one inference: having been repeatedly instructed not to penalize Appellant for his silence, and having diligently endeavored to obey the instructions and thereby uphold his solemn oath to adhere to court instructions, he is now free to consider Appellant's suspicious silence and attribute to it appropriate weight in assessing Appellant's punishment.

plain view; (2) the contraband was conveniently accessible to the accused; (3) the accused was the owner of the place where the contraband was found; (4) the accused was the driver of the automobile in which the contraband was found; (5) the contraband was found on the same side of the car seat as the accused was sitting; (6) the place where the contraband was found was enclosed; (7) the contraband emitted a strong odor; (8) paraphernalia to use the contraband was in view of or found on the accused; (9) conduct by the accused indicated a consciousness of guilt; (10) the accused had a special connection to the contraband; (11) occupants of the automobile gave conflicting statements about relevant matters; (12) the physical condition of the accused was compatible with recent consumption of the contraband found in the car; (13) traces of the contraband were found on the accused; (14) affirmative statements connect the accused to the contraband. *See Lewis v. State,* 664 S.W.2d 345, 349 (Tex. Crim.App.1984); *Gutierrez v. State,* 628 S.W.2d 57, 60 (Tex.Crim.App.1982); *Sanchez v. State,* 589 S.W.2d 422, 423 (Tex.Crim.App. 1979); *Moulden v. State,* 576 S.W.2d 817, 818, 820 (Tex.Crim.App.1978); *Duff v. State,* 546 S.W.2d 283, 287 (Tex.Crim.App.1977).

■ We have applied these factors to the facts of this case. Appellant was the driver of the vehicle in which the contraband was found. The contraband was shown to be in plain view and easily accessible to Appellant. The place where the contraband was found was enclosed, i.e., in Appellant's vehicle, and the paraphernalia to use the contraband was located on the console next to him. Additionally, the evidence graphically described Appellant's physical condition, which was compatible with recent consumption of the contraband, and the existence of "track marks" and blood which were compatible with recent injection of a substance not unlike the contraband. Consequently, we find that there was sufficient evidence for the jury to find that Appellant was in possession of a controlled substance. Appellant's Point of Error No. Eight is overruled.

■ In Point of Error No. Nine, Appellant complains that the trial court erred in allowing Appellant's booking record to be admitted into evidence. The record was introduced through the testimony of Leon Harris, custodian of records at the El Paso County Detention Facility. Harris testified that the record was made by someone with personal knowledge of the events, made at or near the time of the event, and made in the regular course of business. Consequently, the booking record constituted a record or report of a regularly conducted activity and as such was admissible as an exception to the hearsay rule, regardless of the availability of the declarant. TEX.R.CRIM.EVID. 803(6). Appellant's challenge to the trustworthiness of the record is without merit. *See Jackson v. State,* 822 S.W.2d 18, 31 (Tex.Crim.App. 1990). We overrule Appellant's Point of Error No. Nine.

■ In his tenth and final point of error, Appellant claims that the trial court erred in failing to grant his motion for continuance so that he could obtain a statement of facts from his co-defendant's examining trial. Appellant sought to use the statement of facts to cross-examine Officer Barragan. In support of his contention, Appellant cites *White v. State,* 823 S.W.2d 296 (Tex.Crim.App. 1992). In *White,* the Court of Criminal Appeals, in reversing this Court, held that the refusal to grant defendant a continuance to obtain a transcript from his own prior trial, which resulted in a mistrial, was reversible error. In *McKibbon v. State,* 749 S.W.2d 83 (Tex.Crim.App.1988) however, the Court of Criminal Appeals refused to extend this rule to all situations where a defendant is requesting a transcription of his co-defendant's trial. *Id.* at 86. In that regard, the Court of Criminal Appeals held that:

[E]ach request should be treated on a case by case basis. The defendant should set out with specificity that portion of the testimony he desires from any prior proceeding, whether from his own trial or that of a third party, and demonstrate a particular need for a transcription of that evidence. Much weight should be given to the trial judge's exercise of discretion after conducting a hearing on the particular request.

*Id.* at 85.

The *McKibbon* Court found that the defendant had failed to show a particularized spe-

cific need and that his motion was therefore properly overruled. *Id.* Likewise, in the present case, Appellant's request neither indicates the specific passages of testimony needed nor demonstrates a particular specific need for the transcript. Neither does the record reflect what efforts were made to obtain the record. Absent such a showing, we find that the trial court was correct in overruling Appellant's motion for a continuance. Furthermore, even had Appellant made the requisite showing, it is apparent that Appellant was not harmed by the trial court's refusal to grant a continuance insofar as the record reflects that Appellant was able to obtain the transcript in time for trial. Appellant's Point of Error No. Ten is overruled.

Having overruled Appellant's Points of Error Nos. One through Four and Eight through Ten,[9] and further having sustained Point of Error No. Five, we reverse the portion of the trial court's judgment that assesses punishment, affirm the remainder of the judgment, and remand the cause to the trial court for new sentencing proceedings.

McCOLLUM, J., not participating.

9. Given our disposition of Point of Error No. Five, we need not address Points of Error Nos. Six and Seven.