In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-05-00236-CR
______________________________


MICHAEL DARTY, Appellant
 
V.
 
THE STATE OF TEXAS, Appellee


                                              

On Appeal from the County Court
Marion County, Texas
Trial Court No. 11,770


                                                 



Before Morriss, C.J., Ross and Carter, JJ.
Memorandum Opinion by Justice Carter


MEMORANDUM OPINION

            Michael Darty pled guilty to a misdemeanor driving while intoxicated (DWI) charge and was
sentenced to thirty days in jail. The imposition of sentence was suspended, and Darty was placed
on community supervision for six months. He appeals that conviction. We find the State did not
meet its burden of proof to show probable cause for the initial traffic stop and conclude the evidence
seized during the arrest should have been suppressed.
            Before entering into a negotiated plea agreement, Darty filed a motion to suppress the
evidence seized during his arrest which, among other things, asserted that his arrest was without a
warrant and the arresting officer lacked probable cause to stop Darty, all in violation of his Fourth
Amendment rights. See U.S. Const. amend. IV. The trial court conducted a hearing on the motion
to suppress, after which the motion was denied. 
            In his first point of error, Darty contends the trial court erred in denying his motion to
suppress. We sustain this point of error.
             In reviewing a decision on a motion to suppress, the appellate court must view the evidence
in the light most favorable to the trial court's ruling. Reyes v. State, 899 S.W.2d 319, 322 (Tex.
App.—Houston [14th Dist.] 1995, pet. ref'd); Winters v. State, 897 S.W.2d 938, 940 (Tex.
App.—Beaumont 1995, no pet.). Absent a clear showing of abuse of discretion, the trial court's
finding should not be disturbed. Meek v. State, 790 S.W.2d 618, 620 (Tex. Crim. App. 1990).
            When a defendant seeks to suppress evidence because of an illegal search and seizure that
violates the Fourth Amendment to the United States Constitution, he or she bears the initial burden
of rebutting the presumption of proper police conduct. Russell v. State, 717 S.W.2d 7, 9 (Tex. Crim.
App. 1986); De La Paz v. State, 901 S.W.2d 571, 575 (Tex. App.—El Paso 1995, pet. ref'd). The
defendant meets this burden by establishing that a search or seizure occurred without a warrant. 
State v. Hopper, 842 S.W.2d 817, 819–20 (Tex. App.—El Paso 1992, no pet.). 
            The State's only argument on appeal is that Darty failed to show that the arresting officer did
not have a warrant and, therefore, never satisfied his initial burden of rebutting the presumption of
proper police conduct. We disagree.
            The State asserts there is no proof in the record sufficient to meet Darty's initial burden. The
arresting officer, Clay Willeford, a game warden, was the only witness at the suppression hearing. 
It is true that Willeford never explicitly and affirmatively stated that he did not have a warrant, but
it is also clear from the record that he did not.
            Willeford testified that he had stopped the driver of another vehicle that night in order to
question its occupants. Just after Willeford had finished talking to the persons in that vehicle and
the driver had pulled away, Darty approached Willeford from behind and passed him. Darty then
made a right turn onto another road a short distance away. It was at this point that Willeford began
to follow Darty, turned on his emergency lights, and initiated the traffic stop.
            When asked to give the reason that he decided to stop Darty, Willeford testified as follows:
QWell, can you articulate the reason that you decided to pull him over
after he passed your vehicle?
 
ABecause he went straight out on 729.
 
QWithout slowing down?
 
AWithout slowing down or stopping.
            It is clear from the record that the only reason Willeford stopped Darty was because of
alleged traffic infractions. If Willeford had been aware of a warrant to search or arrest Darty, he
certainly would have mentioned that as a reason for stopping Darty. The circumstances show that
Willeford was simply initiating a routine traffic stop, not attempting to execute a warrant. Although
Willeford did not explicitly state that he did not have a warrant, it is obvious from the record that
Willeford was not relying on a warrant in detaining Darty. We hold that Darty met his initial burden
to show that the stop occurred without a warrant. See Russell v. State, 717 S.W.2d 7, 10 (Tex. Crim.
App. 1986) ("From Officer Graves' testimony it is obvious that no warrant was obtained.").
            Once a defendant has established 1) that a search or seizure occurred and 2) that no warrant
was obtained, the burden of proof shifts to the State. Id. at 9. If the State is unable to produce
evidence of a warrant, then it must prove the reasonableness of the search or seizure. Id. at 10. 
            The State's only contention is that Darty failed to establish that Willeford did not have a
warrant. The State does not assert that Willeford had probable cause to stop Darty, and our own
review of the record does not reveal probable cause. We hold that the trial court erred in overruling
Darty's motion to suppress. 
            A routine traffic stop is a temporary investigative detention. Campbell v. State, 864 S.W.2d
223, 225 (Tex. App.—Waco 1993, pet. ref'd). Under the Fourth Amendment, a temporary detention
is justified when the detaining officer has specific, articulable facts which, taken together with
rational inferences from those facts, lead the officer to conclude that the person detained is, has been,
or soon will be engaged in criminal activity. Terry v. Ohio, 392 U.S. 1, 30 (1968). These facts must
amount to more than a mere hunch or suspicion. Davis v. State, 947 S.W.2d 240, 244 (Tex. Crim.
App. 1997).
            Willeford testified he stopped Darty because he did not slow down before making a right
turn. Willeford did not know if there was a stop sign at the intersection where Darty turned, which
would have required him to stop. Willeford testified there was no traffic approaching to which Darty
would have needed to yield. Willeford did not testify that Darty made the right turn recklessly or
at a high rate of speed. He did not testify that Darty failed to use his turn signal. Willeford testified
that Darty was traveling at roughly twenty or thirty miles per hour when he passed his vehicle. When
asked what traffic offense Darty had committed, Willeford testified to the following:
QWell, did he commit any traffic offenses in your presence?
 
AThat he ran a stop sign.
 
QIf there was a stop sign there, but you said that you don't know
whether there was one or not.
 
AI couldn't tell you for sure. I mean, I don't remember looking to see
if there was a stop sign. I just remember he went straight out onto the intersection,
didn't yield or stop.

            After reviewing the entire record, we find no evidence that would have allowed Willeford
to reasonably believe that Darty was, had been, or would soon be engaged in criminal activity. See
Terry, 392 U.S. at 30. Accordingly, we hold the trial court abused its discretion by denying the
motion to suppress the evidence obtained as a result of the detention and arrest.
            In his second point of error, Darty contends the State failed to show probable cause for his
arrest. This arrest was subsequent to the traffic stop, which we have discussed and held to be
improper. Therefore, we need not examine this point of error.
            We reverse the judgment of the trial court and remand for further proceedings consistent with
this opinion.




                                                                        Jack Carter
                                                                        Justice
 
Date Submitted:          January 31, 2006
Date Decided:             February 9, 2006

Do Not Publish