

# IN THE
# TENTH COURT OF APPEALS

### No. 10-09-00122-CR

**KANDANCE YANCY MARRIOTT,**

                **Appellant**

 **v.**

**THE STATE OF TEXAS,**

                **Appellee**

### From the 13th District Court
### Navarro County, Texas
### Trial Court No. 30746-CR

## MEMORANDUM OPINION

Kandance Yancy Marriott was convicted by a jury for the offense of engaging in organized criminal activity. *See* TEX. PEN. CODE ANN. § 72.01 (Vernon 2003). Based on the jury's verdict, the trial court assessed Marriott's punishment at imprisonment for ninety-nine (99) years in the Texas Department of Criminal Justice – Institutional Division and a fine of $10,000.00. *See* TEX. PEN. CODE ANN. § 12.32 (Vernon 2003). Marriott complains that the trial court erred by amending her indictment, that the trial court improperly commented on the weight of the evidence through the introduction of evidence, that the trial court erred by denying a requested instruction on Marriott's

failure to testify during sentencing, that the trial court abused its discretion in admitting evidence of extraneous acts, that the trial court erred in refusing an instruction in the charge regarding comments by the trial court during trial, and that the trial court erred by overruling Marriott's objections to the improper jury argument by the State. Because we find that the trial court's failure to include a no-adverse-inference instruction regarding Marriott's failure to testify at the punishment phase of her trial was erroneous and harmful to Marriott, we reverse and remand for a new trial on punishment only. We affirm the judgment of guilt in all other respects.

We will discuss Marriott's issues in the order in which they arose during the pendency of the proceedings: pre-trial, guilt-innocence phase of the trial, and the punishment phase of the trial.

### Pre-Trial Rulings

#### Error in Indictment

Marriott complains that the trial court erred by overruling her objection to the State's motion to amend the indictment to correct an error in the wording of the indictment. The indictment alleged that Darrell Lynn Marriott was the defendant, and then listed Darrell Lynn Marriott as a member of the combination. Darrell Lynn Marriott was the spouse of Kandance Yancy Marriott and was indicted at the same time for the same offenses. The State filed a motion to amend the indictment to ask the trial court to correct the listed name of the defendant, to which Marriott objected. The trial court granted the State's motion and interlineated Marriott's name in place of Darrell Lynn Marriott.

Marriott contends that the indictment was void because it did not charge "a person" with the commission of an offense. *See* TEX. CONST. Art. V, § 12(b). *See also* TEX. CONST. Art. I, Sec. 10. We disagree. It is apparent from the face of the indictment that "a person" was charged with the offenses. The purpose of naming the accused in the indictment is for identification, which is "a matter of form which can easily be altered at the election of the accused." *Jones v. State*, 504 S.W.2d 442, 444 (Tex. Crim. App. 1974); *see also* TEX. CODE CRIM. PROC. ANN. art. 26.08 (Vernon 2009). The act of changing the name of the defendant is a ministerial act. *See Jones*, 504 S.W.2d at 442. Further, changing the defendant's name is not an amendment to the indictment for purposes of article 28.10 of the Code of Criminal Procedure. *See Kelley v. State*, 823 S.W.2d 300, 302 (Tex. Crim. App. 1992); *see also Wynn v. State*, 864 S.W.2d 539, 541 (Tex. Crim. App. 1993).

Further, the time for Marriott to have notified the trial court of a defect in her name as stated in the indictment was at arraignment. *Bowden v. State*, 628 S.W.2d 782, 787 (Tex. Crim. App. 1982). An arraignment takes place for the purpose of fixing a defendant's identity and hearing her plea. TEX. CODE CRIM. PROC. ANN. art. 26.02 (Vernon 2009). Marriott had appeared for arraignment, stated that she understood the charges against her, and raised no objection to the wrong name being listed in the indictment approximately two years before the State's motion to amend the indictment was filed. Had she made such a complaint, article 26.07 directly addresses errors in the name of a criminal defendant:

> When the defendant is arraigned, h[er] name, as stated in the indictment,
> shall be distinctly called; and unless [s]he suggest by h[er]self or counsel

that [s]he is not indicted by h[er] true name, it shall be taken that h[er] name is truly set forth, and [s]he shall not thereafter be allowed to deny the same by way of defense.

Tex. Code Crim. Proc. Ann. art. 26.07 (Vernon 2009). A criminal defendant who wishes to have an indictment amended to reflect her true name may do so:

If the defendant, or h[er] counsel for h[er], suggests that [s]he bears some name different from that stated in the indictment, the same shall be noted upon the minutes of the court, the indictment corrected by inserting therein the name of the defendant as suggested by h[er]self or his counsel for h[er], the style of the case changed so as to give h[er] true name, and the cause proceed as if the true name had been first recited in the indictment.

Tex. Code Crim. Proc. Ann. art. 26.08 (Vernon 2009). Thus, if an indictment contains an error in the defendant's name, it is the defendant's duty to call this error to the attention of the trial court at the time of arraignment. If she fails to do so, she has waived the error and cannot later use it as a defense. *See Bowden*, 628 S.W.2d at 787. Appellant failed to notify the trial court at her arraignment that she is not Darrell Lynn Marriott, but is in fact Kandance Yancy Marriott. Thus, she waived this error in the indictment and she cannot raise it on appeal. *See Jackson v. State*, 05-01-01840-CR, 2002 Tex. App. LEXIS 8369 at *8 (Tex. App.—Dallas Nov. 26, 2002, no pet.) (not designated for publication) (objection waived even though defendant's brother was named as the defendant in indictment). Appellant's issue number one is overruled.

### Guilt-Innocence Issues

### Statement of Facts—Guilt/Innocence

Marriott and her husband, Lynn, were engaged in the business of selling manufactured homes and land in a business called One-Way Home and Land. Lynn

and David Martin became partners, with Martin providing financial backing on several projects, including One-Way. Their oral agreement was that Martin would provide the money and Lynn would provide the labor for whatever was needed for each project. At each sale, Martin would first recover his investment and then any profits were to be split equally between Martin and Lynn.

Martin and Lynn purchased a vacant former Burger King restaurant building to refurbish and convert to a Dickey's Barbecue restaurant in Navarro County. Martin provided the capital for the purchase and other amounts when and as requested by Lynn prior to August of 2004. They also were working to open a Huddle House restaurant together under the same terms. Martin and Lynn also entered into several other real estate purchases.

Martin discovered in August of 2004 that he had not been paid on some closings through One-Way. He was given spreadsheets from One-Way's bookkeeper and seized many of their records. The spreadsheet given to him in early August was different from the spreadsheet he received later in August. Martin ultimately discovered eighteen checks issued by title companies in his name that he did not receive. These checks formed the basis of the underlying offense alleged in the indictment, misapplication of fiduciary property. *See* TEX. PEN. CODE ANN. § 32.45 (Vernon 2003).

The checks contained forged endorsements and were deposited into various accounts, including One-Way, the Dickey's restaurant account, and the Huddle House account. Martin was an authorized signer on the Huddle House account but had no access to it, and was not an authorized signer on any of the other accounts into which

the checks were deposited. Martin denied giving anyone authority to sign his name or to deposit those funds into those accounts. The checks were dated and deposited from October of 2003 through August of 2004. Martin testified that when he confronted Marriott and Lynn, Marriott stated that Martin had told them that they could take the money and deposit it elsewhere.

Marriott testified that Lynn would give her the checks and that she would deposit them wherever he told her to. She denied ever forging Martin's name on the checks, but did admit to writing "For deposit only" and the account number below the signature on the back of the check, which was already on there when Lynn gave her each check. She also admitted to filling out some of the deposit slips to the various accounts. She denied being in charge of the businesses and portrayed herself as an unknowing victim who only did what her husband told her to. She also minimized her involvement in Dickey's and the Huddle House. She was not an authorized signer on either the Dickey's or the Huddle House bank accounts.

During the operation of One-Way, Marriott and her employees would take whatever steps were necessary to ensure that potential buyers could qualify for loans. This included creating or altering official documents, forging signatures, falsifying social security income letters, falsely verifying employment and rental qualifications, paying off creditors for buyers, creating bank accounts with the buyer's name prior to closing, and forging the buyers' signatures on documents, all allegedly taught, required, and sometimes personally accomplished by Marriott. These activities resulted in many buyers who would not have otherwise qualified for loans being approved. Linda

Howard, a former employee of One-Way, testified that every employee of One-Way, including herself, participated in these activities with Marriott. Lynn's involvement in the mortgage fraud was less clear, although Marriott testified that her husband was the one directing where those checks went.

*Admission of Temporary Injunction*

Marriott complains that the trial court erred by admitting a copy of a temporary injunction signed by the trial court in a civil proceeding between the parties relating to Martin's allegations of theft and fraud because it constituted an impermissible comment on the weight of the evidence by the trial court. Specifically, she contends that the admission of the documents violated rule 605 of the Rules of Evidence, and article 38.05 of the Code of Criminal Procedure.

Texas Rule of Evidence 605 states that "the judge presiding at the trial may not testify in that trial as a witness." TEX. R. EVID. 605. Article 38.05 of the Code of Criminal Procedure provides that in ruling on admissibility of evidence, the trial court shall not discuss or comment on the weight of the evidence, or "make any remark calculated to convey to the jury his opinion of the case." TEXAS CODE OF CRIMINAL PROCEDURE ANN. art. 38.05 (Vernon 1979). A trial court improperly comments on the weight of the evidence if it makes a statement that implies approval of the State's argument, indicates disbelief in the defendant's position, or diminishes the credibility of the defense's approach to the case. *Simon v. State*, 203 S.W.3d 581, 590 (Tex. App.—Houston [14th Dist.] 2006, no pet.).

A violation of rule 605 occurs when a judge makes a statement of fact that is "the

functional equivalent of witness testimony." *Hammond v. State*, 799 S.W.2d 741, 746 (Tex. Crim. App. 1990). A judge's findings of fact are not technically the same as testimony. *In re M.S.*, 115 S.W.3d 534, 538 (Tex. 2003). "Our statutes, court-made rules, and judicial decisions emphatically and repeatedly prohibit Texas judges from commenting on the weight of the evidence." *In re T.T. & K.T.*, 39 S.W.3d 355, 359 (Tex. App.—Houston [1st Dist.] 2001, no pet.) (*citing* TEX. CODE CRIM. PROC. ANN. art. 36.14, TEX. R. CIV. P. 277, and *Blue v. State*, 41 S.W.3d 129, 132 (Tex. Crim. App. 2000)).

The Honorable Robert G. Dohoney was assigned to hear both the civil case between Marriott, Lynn, and Martin and the criminal cases of Marriott and Lynn. An order was signed by Judge Dohoney during the civil case that granted a temporary injunction against Marriott and Lynn in favor of Martin, and contained specific findings regarding fraud perpetrated against Martin by Marriott. These specific allegations related to evidence introduced during the trial regarding these fraudulent acts. It is true that Judge Dohoney did not "step down from the bench" and become a witness in the very same proceeding over which he was currently presiding. *See Hensarling v. State*, 829 S.W.2d 168, 170 (Tex. Crim. App. 1992).

However, the findings contained in the temporary injunction in the civil case made by the same judge presiding over the criminal trial were intertwined with the jury's ultimate decision as to the existence of the combination, whether it was carrying on criminal activities, and whether or not Martin had been stolen from by Marriott. The temporary injunction, as admitted, contained findings of fact that certainly could convey to the jury his opinion of the case. We find that the trial court abused its

discretion in the admission of the temporary injunction.

*Harm Analysis*

Having found error, we must address whether or not the error was harmful. When determining harm from a non-constitutional error, we must disregard the error unless it affects Marriott's substantial rights. TEX. R. APP. P. 44.2(b). A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict. *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997). Substantial rights are not affected by the erroneous admission of evidence "if the appellate court, after examining the record as a whole, has fair assurance that the error did not influence the jury, or had but a slight effect." *Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002).

In conducting the harm analysis, we consider everything in the record, including any testimony or physical evidence admitted for the jury's consideration, the trial court's instructions to the jury, the State's theory, any defensive theories, closing arguments, and even voir dire if material to Marriott's claim. *Motilla*, 78 S.W.3d at 355-56; *Morales v. State*, 32 S.W.3d 862, 867 (Tex. Crim. App. 2000). In assessing harm, the factors to be considered are the nature of the evidence supporting the verdict, the character of the alleged error, and how the evidence might be considered in connection with the other evidence in the case. *Motilla*, 78 S.W.3d at 355; *Morales*, 32 S.W.3d at 867. Whether the error was compounded or emphasized also can be a factor. *See e.g., Motilla*, 78 S.W.3d at 356. We ask if a reasonable probability exists that the error moved the jury from a state of non-persuasion to one of persuasion beyond a reasonable doubt.

*Wesbrook*, 29 S.W.3d 103, 119 (Tex. Crim. App. 2000). The existence of substantial evidence of Marriott's guilt may be the most significant factor in this harm analysis. *Id.* at 359.

The temporary injunction was offered and admitted during the testimony of the victim. Martin's testimony did not disclose the identity of the trial judge, nor did he discuss the findings made by the trial court in that order other than to state that he got what he wanted from the proceeding, which was his property, and that the injunction led to a settlement of the case between the parties.

During cross-examination, Marriott was questioned regarding the findings in the injunction that the trial court had found that either Marriott or someone under her control had forged documents. However, no mention was made that Judge Dohoney had signed the temporary injunction or been involved in the civil action at all. There is nothing in the record to indicate that the exhibit was published to the jury or that the exhibits were taken to the jury room during deliberations. The State made reference to Marriott's ongoing criminal activities while she was under the supervision of a court relating to the diversion of funds at closing to pay creditors of One-Way because her bank accounts had been frozen by Martin through the civil suit in its cross-examination of Marriott. The State also questioned Marriott about a forged foreign judgment that was alleged to have been part of a fraud perpetrated against Martin while they were "under the control of the Court."

The overwhelming evidence was that Marriott was the individual in charge of the businesses and that everything went through her from the checks to instructions on

how funds at closing were to be disbursed to the multitude of fraudulent acts perpetrated by the employees of One-Way and her husband. After examining the record as a whole, we have fair assurance that the error did not influence the jury, or had but a slight effect. *See Motilla*, 78 S.W.3d at 355. We overrule issue two.

*Extraneous Offenses*

Marriott complains that the trial court erred by admitting evidence of multiple extraneous offenses during the guilt-innocence phase of the trial. We review the admission of evidence under an abuse of discretion standard. *Casey v. State*, 215 S.W.3d 870, 879 (Tex. Crim. App. 2007). A trial court abuses its discretion if its ruling is outside the zone of reasonable disagreement. *Id*.

The State contends that most, if not all, of the challenged evidence was not evidence of extraneous offenses, but was evidence of the combination. Alternatively, the State argues that the evidence was admissible as same-transaction contextual evidence or for the reasons specifically enumerated in rule 404(b). We must first, then, determine whether or not they were extraneous offenses at all.

*Engaging in Organized Criminal Activity*

A person engages in organized criminal activity "if, with the intent to establish, maintain, or participate in a combination or in the profits of a combination, . . . [s]he commits" one of several enumerated offenses, including misapplication of fiduciary property. TEX. PEN. CODE ANN. § 71.02(a)(8) (Vernon 2003). The State has the burden of proving the combination. *Hart v. State*, 89 S.W.3d 61, 63 (Tex. Crim. App. 2002). A "combination" requires three or more people who collaborate in carrying on criminal

activities.  TEX. PEN. CODE ANN. § 71.01(a) (Vernon 2003).  The State must prove (1) that the defendant intended to establish, maintain, participate in, or participate in the profits of a combination, and (2) that the members of the combination intended to work together in a continuing course of criminal activity.  *Hart*, 89 S.W.3d at 63; *Dowdle v. State*, 11 S.W.3d 233, 236 (Tex. Crim. App. 2000).  There must be evidence of an agreement to act together in a continuing course of criminal activity.  *Nguyen v. State*, 1 S.W.3d 694, 697 (Tex. Crim. App. 1999).  Similar methods of operation, together with joint activities and relationships, support the finding of a single conspiracy.  *McGee v. State*, 909 S.W.2d 516, 518 (Tex. App.—Tyler 1995, pet. ref'd).  A jury may infer criminal intent from any facts that tend to prove its existence, including the acts, words, and conduct of the accused, and the method of committing the crime.  *Manrique v. State*, 994 S.W.2d 640, 649 (Tex. Crim. App. 1999).

*Rules of Evidence 404(b) and 403*

Under Texas Rule of Evidence 404(b), evidence of other crimes, wrongs, or acts is not admissible "to prove the character of a person in order to show action in conformity therewith."  TEX. R. EVID. 404(b).  However, it may be admissible for other purposes, "such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."  *De La Paz v. State*, 279 S.W.3d 336, 342-43 (Tex. Crim. App. 2009).  The rule excludes only that evidence that is offered solely for the purpose of proving bad character and conduct in conformity with that character.  *Id* at 343.  In addition, evidence admissible under rule 404(b) may nonetheless be excluded if the trial judge determines that its probative value is substantially outweighed by the danger of

unfair prejudice. TEX. R. EVID. 403; *Mozon v. State*, 991 S.W.2d 841, 846-47 (Tex. Crim. App. 1999).

*Same Transaction Contextual Evidence*

An exception to rule 404(b) exists in that extraneous offenses may be admissible as same transaction contextual evidence when "several crimes are intermixed, or blended with one another, or connected so that they form an indivisible criminal transaction." *Prible v. State*, 175 S.W.3d 724, 731-32 (Tex. Crim. App. 2005) (*quoting Rogers v. State*, 853 S.W.2d 29, 33 (Tex. Crim. App. 1993)). This type of evidence results when an extraneous matter is so intertwined with the State's proof of the charged crime that avoiding reference to it would make the State's case difficult to understand or incomplete. *Prible*, 175 S.W.3d at 732.

*Letterhead*

Marriott complains of the admission of two exhibits that purported to show letterhead created by Marriott and the forged signature of Martin. In its case-in-chief, the State sought to introduce documentary evidence of letterhead allegedly created and forged by defendant using the victim's name and law firm name. According to one witness, the letterhead was used for the purpose of sending letters to creditors and credit reporting agencies to clear up the credit reports of potential buyers.

*The Midas Group*

Marriott complains of the admission of testimony during the State's case-in-chief by her sister Kathryn Davis regarding the establishment of a corporation in Kathryn's name with a forged signature and without her knowledge or consent. Marriott and

Kathryn's sister, Karen Hayes, had suggested the name of Midas Group to Kathryn when Kathryn was becoming part of a legal pyramid scheme to sell electricity. Unbeknownst to Kathryn, Lynn had used an entity called the Midas Financial Group on a real estate transaction in December of 2004. Further, at a real estate closing in 2005, $12,900 was wired to an account created for the Midas Group, which Kathryn controlled. This money was diverted to the Midas Group because Martin had taken control of all of the assets of the business, including the bank accounts. Marriott arranged for the money to be sent to her sister through the Midas Group by the title company, which then was disbursed to Marriott and her sister Karen Hayes in several installments shortly after the closing.

*Mortgage Fraud*

Marriott complains of the introduction of multiple extraneous offenses offered by the State through the testimony of Linda Howard, a former employee of One-Way. Howard was called to testify in the rebuttal phase of the trial by the State. Howard testified to Marriott's knowledge, participation, and sponsorship of a course of conduct relating to defrauding mortgage companies and the federal government. The allegations of which Marriott complains are (1) that Marriott gave Howard $1,500 to open a bank account for a prospective buyer so that they could state that the buyer had a bank account, and then they removed the buyer's name from the account after closing; (2) manufacturing documents for mortgage fraud; (3) routinely forging social security letters, check stubs, verifications of rent, divorce decrees, satisfaction of debt judgments; (4) false verifications of rent and employment, which allowed buyers to obtain

fraudulent mortgages; (5) creation of false credit reports; (6) generation of letters to credit reporting agencies using Martin's letterhead to improve credit scores; (7) forging buyers' signatures on credit documents using a "cut and paste" method; (8) paying off delinquent accounts for potential buyers using Marriott's money to improve their credit scores; (9) forging signatures by tracing; (10) a mortgage broker confronting Marriott about fraud, who stated she fired an employee over the incident; (11) manufacturing false social security income letters; and (12) paying people to be false employers to give false employment information to mortgage companies. Howard testified that Marriott knew of and directed these activities.

*Analysis*

The State contends that the letterhead provides some evidence of the existence of the combination. We agree. We note that the language of the indictment did not define the criminal activities of the combination, which was comprised of Marriott, her husband, Mary Putnam, Debbie Grace, Katherine Davis, Karen Hayes, and unnamed other individuals. Mary Putnam and Debbie Grace were employees of One-Way. Karen Hayes ran another business in Henderson County, but the contracts on those sales listed One-Way as the seller. The combination's criminal activities included Marriott and her employees falsifying whatever was necessary to ensure that buyers qualified for mortgages. The letterhead was admissible to assist in proving the existence and ongoing criminal activities of a combination beyond a reasonable doubt and was not an extraneous offense pursuant to rule 404(b), but went to prove an element of the offense of engaging in organized criminal activity.

Further, the evidence elicited from Linda Howard regarding the ongoing mortgage fraud in response to Marriott's own testimony was also admissible as evidence of the combination and the knowledge and intent as to the members of the combination to engage in ongoing criminal activities that began before and ended after the misappropriation of the 18 checks. Further, the testimony established that there were multiple employees, as well as Marriott, that were involved in the combination, and the State had to prove that there were at least three members of the combination. These were not extraneous offenses, but were evidence to establish the existence of the combination, its members, and its ongoing criminal activities, which are elements of the offense.

The forged signature on the articles of incorporation of the Midas Group and the use of the Midas Group name on a real estate transaction by Lynn Marriott provide some evidence of the ongoing criminal activities of the combination and that Karen was involved in the combination with Marriott and Lynn. The money taken from the closing in 2005, diverted to the Midas Group, and disbursed to Marriott and Hayes by Davis is also evidence that both Marriott and Karen were continuing the ongoing criminal activity of the combination.

However, to the extent that the money diverted to the Midas Group after the closing is an extraneous offense, if it was, it was admissible under rule 404(b) as evidence of motive, knowledge and intent, common scheme or plan, or absence of mistake. *See* TEX. R. EVID. 404(b).

Further, we find that the probative value of each act referred to in the trial was

not substantially outweighed by any prejudicial effect. *See* TEX. R. EVID. 403. We find that the trial court did not abuse its discretion. We overrule issue four.

*Charge Error—Denial of Instruction*

Marriott complains that the trial court erred by denying her request to include an instruction in the charge on guilt-innocence that the jury not consider any comment by the trial court to express the trial court's opinion as to an ultimate issue to be determined by the jury. This request arose from an objection to the temporary injunction admitted into evidence that had been signed by the trial court. Marriott objected again to the admission of that exhibit during the charge conference in the guilt-innocence phase. The trial court included a limiting instruction regarding that exhibit, that it was admitted for the limited purpose of demonstrating how a settlement was reached in the civil case and instructing the jury that the findings and rulings contained in the injunction were not to be considered as evidence of guilt, which is not an impermissible comment on the weight of the evidence. *See Bartlett v. State*, 270 S.W.3d 147, 151 (Tex. Crim. App. 2008).

Marriott provides no authorities demonstrating her entitlement to the requested instruction, nor does she suggest how the denial of the instruction was harmful to her. As such, this issue is inadequately briefed, and therefore, is waived. TEX. R. APP. P. 38.1(h). We overrule issue five.

*Improper Jury Argument*

Marriott complains in issues six and seven that the trial court erred by overruling two objections to the State's closing argument. In issue six, Marriott complains that the

State's comparison of Marriott to Bernie Madoff and Allen Stanford was outside of the evidence and improper. In issue seven, Marriott complains that the State's argument that Marriott made $75,000 per year defrauding the government, buyers, and David Martin was a misstatement of the evidence and not a reasonable deduction from the evidence.

Proper jury argument generally falls within one of four general areas: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) answer to argument of opposing counsel; and (4) plea for law enforcement. *Brown v. State*, 270 S.W.3d 564, 570 (Tex. Crim. App. 2008) (*citing Alejandro v. State*, 493 S.W.2d 230, 231 (Tex. Crim. App. 1973)).

*Comparison to Madoff and Stanford*

During the State's closing argument in the guilt-innocence phase of the trial, the prosecutor stated: "It's easy to see how somebody like Bernie Madoff or Allen Stanford or the Marriotts do this." Marriott objected to the comment being outside of the record, which the trial court overruled. The State then followed with "That's how they do it."

"It is the duty of trial counsel to confine their arguments to the record; reference to facts that are neither in evidence nor inferable from the evidence is therefore improper." *Brown*, 270 S.W.3d at 570 (internal citations omitted). "The arguments that go beyond these areas too often place before the jury unsworn, and most times believable, testimony of the attorney." *Alejandro*, 493 S.W.2d at 231. Consequently, error exists when facts not supported by the record are interjected in the argument, but such error is not reversible unless, in light of the record, the argument is extreme or

manifestly improper. *Brown*, 270 S.W.3d at 570.

The State's comments do not fall within any of the parameters set forth by the Court of Criminal Appeals. The comparison of the Marriotts to Madoff and Stanford is not unlike comparing defendants to other notorious criminals. See *Brown v. State*, 978 S.W.2d 708, 714 (Tex. App.—Amarillo 1998, pet. ref'd) (comparing defendant to Jeffrey Dahmer, John Wayne Gacy, and Ted Bundy improper); *Massey v. State*, No. 04-99-00040-CR, 1999 Tex. App. LEXIS 7372 at *9 (Tex. App.—San Antonio 1999, pet. ref'd) (comparison to Killeen Luby's shooting and New York subway shooting erroneous); *Gonzalez v. State*, 115 S.W.3d 278, 284-85 (Tex. App.—San Antonio 2003) (comparison between defendant and Osama Bin Laden and Al Qaida improper); *Stell v. State*, 711 S.W.2d 746, 748 (Tex. App.—Corpus Christi 1986, no pet.) (comparison to Lee Harvey Oswald improper). These types of arguments that reference matters that are not in evidence and may not be inferred from the evidence are usually, "designed to arouse the passion and prejudices of the jury and as such are highly inappropriate." *Borjan v. State*, 787 S.W.2d 53, 57 (Tex. Crim. App. 1990). In examining challenges to jury argument, we consider the remark in the context in which it appears. *Gaddis v. State*, 753 S.W.2d 396, 396 (Tex. Crim. App. 1988). We find that the argument by the State was improper.

*Harm Analysis*

We will analyze the alleged harm under rule 44.2(b), which requires that we disregard any error not affecting substantial rights. TEX. R. APP. P. 44.2(b). Additionally, since we have determined that the State's comments were improper jury

argument, the trial court's erroneous overruling of Marriott's objection is also not reversible error unless it affected Marriott's substantial rights. TEX. R. APP. P. 44.2(b); *Martinez v. State*, 17 S.W.3d 677, 692-93 (Tex. Crim. App. 2000); *Mosley v. State*, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998) (op. on reh'g).

When analyzing the harm caused by an improper jury argument, we examine the following factors: (1) severity of the misconduct (the magnitude of the prejudicial effect of the prosecutor's remarks), (2) measures adopted to cure the misconduct (the efficacy of any cautionary instruction by the judge), and (3) the certainty of conviction absent the misconduct (the strength of the evidence supporting the conviction). *Ramon v. State*, 159 S.W.3d 927, 929 (Tex. Crim. App. 2004) (*citing Mosley v. State*, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998)).

In evaluating the first factor, the severity of the misconduct, we must consider "whether [the] jury argument is extreme or manifestly improper [by] look[ing] at the entire record of final arguments to determine if there was a willful and calculated effort on the part of the State to deprive appellant of a fair and impartial trial." *Cantu v. State*, 939 S.W.2d 627, 633 (Tex. Crim. App. 1997). Viewing the State's argument as a whole and after a review of the record, we must question whether the State's argument was made in a willful or calculated effort to deprive Marriott of a fair and impartial trial. *See Brown*, 270 S.W.3d at 573; *Cantu*, 939 S.W.2d at 633. On this record, we cannot reach that conclusion.

Regarding the second factor, the trial court adopted no curative measures because it overruled the objection by Marriott. Finally, in analyzing the third factor, we

must determine the likelihood of conviction absent the improper argument. *See Mosley*, 983 S.W.2d at 693. We find that there was a strong likelihood of conviction without the improper argument. We find the State's improper argument and the trial court's failure to sustain the objection to that argument to be harmless. We overrule issue six.

*The $75,000 Comment*

Marriott complains that the trial court erred by overruling her objection to the State's argument in the guilt-innocence phase of the trial that she received $75,000 a year "defrauding the government, defrauding the buyers, and defrauding David Martin…" However, Marriott had testified that she and her husband received over $6,700 per month from One-Way. There was evidence that Marriott had indeed defrauded the government, multiple buyers, and Martin through the pattern of mortgage fraud perpetrated by Marriott and by the other alleged members of the combination. This argument was made in the rebuttal portion of the argument in response to Marriott's contention that she did not profit from the misapplication of the checks, and was a reasonable inference from the evidence. The trial court did not err in overruling the objection because the State's argument regarding Marriott's profits from the combination was not improper. We overrule issue seven.

*Punishment Phase Issue*

*Charge Error—Failure to Testify*

Marriott complains that the trial court erred by failing to include an instruction requested by Marriott regarding her failure to testify in the punishment phase of her trial. The State prepared the charge on punishment, which did not contain an

instruction or reference of any kind to Marriott's failure to testify. After Marriott objected to the lack of an instruction, the State did not respond, and the trial court overruled the objection. Although she had testified during the guilt-innocence phase of the trial, Marriott did not testify during the punishment phase of her trial.

*Statement of Facts—Punishment Phase*

The State's case on punishment lasted for two days. During the punishment phase, the State called multiple witnesses who gave further testimony regarding extraneous offenses, some of which were brought out in the guilt-innocence phase, but many were not. These extraneous offenses bore little relation to Martin and the misappropriated checks, but expounded at length upon Marriott's extensive history in mortgage fraud with multiple victims, multiple employees, and taking place in multiple counties, even after Marriott's arrest for this offense. Marriott presented seven witnesses on her behalf as well relating to her good character, charitable works, and candidacy for probation. The State did not directly reference her failure to testify in the punishment phase, but did refer to her prior testimony in the guilt-innocence phase in its closing argument in the punishment phase, including a claim that she had committed aggravated perjury with that prior testimony.

*No-Adverse-Inference Instruction*

Upon a defendant's request, the trial court must instruct jurors that they may not draw any adverse inference from a defendant's failure to testify at the punishment phase. *Beathard v. State*, 767 S.W.2d 423, 432 (Tex. Crim. App. 1989). A criminal defendant cannot be compelled to be a witness against herself. U.S. CONST. AMEND. V,

cl. 3.  The Fifth Amendment attempts to secure the right of a criminal defendant to elect not to testify and to prohibit the State from exacting a price for exercising that right. *Griffin v. California*, 380 U.S. 609, 614, 85 S. Ct. 1229, 1232-33, 14 L. Ed. 2d 106 (1965).  The omission of a no-adverse-inference punishment instruction attaches such a price to the exercise of the privilege because "the members of a jury, unless instructed otherwise, may well draw adverse inferences from a defendant's silence."  *Carter v. Kentucky*, 450 U.S. 288, 301, 101 S. Ct. 1112, 1119, 67 L. Ed. 2d 241 (1981).

Marriott's right not to testify continued after her conviction until after she was sentenced.  *Beathard v. State*, 767 S.W.2d 423, 432 (Tex. Crim. App. 1989); *Brown v. State*, 617 S.W.2d 234, 236-37 (Tex. Crim. App. 1981).  Further, as the State now concedes, Marriott had a right to a no-adverse-inference instruction, which concerns the fact that she elected not to testify, at the punishment stage of the trial.  *White v. State*, 779 S.W.2d 809, 828 (Tex. Crim. App. 1989); *Beathard*, 767 S.W.2d at 432; *Brown*, 617 S.W.2d at 238.  The trial court's denial of the instruction was erroneous.

*Harm Analysis*

Finding error, we must now determine whether such error is reversible.  We will reverse upon a finding of error, unless we determine beyond a reasonable doubt that the error did not contribute to Marriott's punishment.  TEX. R. APP. P. 44.2 (a).  Since this is a case of charging error with a timely objection, we will reverse only if the error was calculated to injure the rights of Marriott, *i.e.*, there must be some harm to her from the error.  *See White*, 779 S.W.2d at 828, *citing Almanza v. State*, 686 S.W.2d 157 (Tex. Crim. App. 1985) (op. on reh'g); *Ulloa v. State*, 901 S.W.2d 507, 512 (Tex. App.—El Paso 1995,

pet. ref'd); *De La Paz v. State*, 901 S.W.2d 571, 580 (Tex. App.—El Paso 1995, pet. ref'd).

Rule 44.2(a) requires us to focus on whether the error might have prejudiced the jurors' decision-making, not on the weight of other evidence of guilt. *See Harris v. State*, 790 S.W.2d 568, 587-88 (Tex. Crim. App. 1989). We must examine the source of the error, the nature of the error, whether or to what extent it was emphasized by the State, and its probable collateral implications. *Id.* at 587. Further, we must also determine whether declaring the error harmless would encourage the State to commit the error again with impunity. *Id.; see Ulloa*, 901 S.W.2d at 514.

In other situations where courts have found the failure to include a no-adverse-inference instruction to be harmless, generally there was nothing additional for the defendant to refute in the punishment phase of the trial. *See Beathard v. State*, 767 S.W.2d 423, 432-33 (Tex. Crim. App. 1989) (error harmless when State introduced no evidence at punishment phase; defendant would not need to counter factual assertions made by the State); *Martinez v. State*, No. 04-98-00154-CR, 1999 Tex. App. LEXIS 5343 at *4 (Tex. App.—San Antonio 1999, no pet.) (not designated for publication) (error harmless when no evidence to rebut introduced by State during punishment phase); *but see White v. State*, 779 S.W.2d 809 (Tex. Crim. App. 1989) (absence of instruction harmless because evidence at guilt-innocence and punishment demonstrated defendant had murdered and robbed another elderly woman, had a reputation for violence, and defendant called no witnesses at punishment; lack of instruction was not "calculated to injure the rights of the defendant").

Cases where the error was found to be harmful largely involve a potential

expectation from the jury to refute some evidence presented in the punishment phase of the trial. *See Durham v. State*, 153 S.W.3d 289, 293 (Tex. App.—Beaumont 2004, no pet.) (error harmful when the State argued probation system flawed and defendant's witness made assurances as to defendant's ability to complete probation coupled with sixty year sentence and no prior convictions); *Ruiz v. State*, No. 08-01-00287-CR, 2003 Tex. App. LEXIS 2365 at *11 (Tex. App.—San Antonio 2003, no pet.) (not designated for publication) (error harmful when State argued against probation unless defendant admits guilt and implied defendant had smuggled drugs previously); *Ulloa v. State*, 901 S.W.2d 507, 513-14 (Tex. App.—El Paso 1995, pet. ref'd) (error harmful when crime was nonviolent and defendant called several witnesses to testify to his good character, which raised expectation that defendant would express like sentiments and State likely to repeat error); *De La Paz v. State*, 901 S.W.2d 571, 581-82 (Tex. App.—El Paso 1995, pet. ref'd) (same).

The length of the sentence given by the jury is not, in and of itself, dispositive of the issue of harm. *Accord White*, 779 S.W.2d at 828 (defendant sentenced to death); *Castaneda v. State*, 852 S.W.2d 291, 296 (Tex. App.—San Antonio 1993, no pet.). However, in the cases where reversible error was found, the fact that the defendant received more than the minimum sentence was considered in the harm analysis.

While we agree with the State that the evidence supporting the sentence assessed by the jury was strong, we cannot say beyond a reasonable doubt that the failure of the trial court to properly instruct the jury regarding Marriott's invocation of her constitutional right to remain silent during the punishment phase did not contribute to

her punishment. The jury may well have wondered why Marriott did not attempt to refute any of the vast number of allegations against her in punishment, and we find, after much deliberation, that the trial court's refusal to aid the jury by including this requested instruction was harmful to her. We sustain issue three.

*Conclusion*

We find that Marriott waived any complaint to errors in her name in the indictment. We find that the error relating to the admission of the temporary injunction was harmless. We find that the evidence complained of regarding extraneous offenses was not extraneous but was evidence of an element of the offense, or if it was extraneous, it was properly admitted. We find that the complaint regarding the jury instruction regarding comments made by the trial court to have been waived. We find that the comments regarding Madoff and Stanford in the State's closing argument in guilt-innocence was erroneous but harmless, and the comment regarding Marriott's profiting from her deeds was not erroneous. We find that the erroneous refusal of the trial court to include a no-adverse-inference instruction relating to Marriott's failure to testify in the punishment phase of her trial was harmful. We affirm the judgment of guilt but reverse and remand the punishment phase for a new trial as to punishment only.


TOM GRAY
Chief Justice

Before Chief Justice Gray,
   Justice Reyna, and
   Justice Davis
   (Justice Davis concurs without a separate opinion)
Affirmed in part; reversed and remanded as to punishment only
Opinion delivered and filed July 21, 2010
Do not publish
[CRPM]