IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-09-00122-CR

 

KandaNce Yancy Marriott,

                                                                                    Appellant

 v.

 

The State of Texas,

                                                                                    Appellee

 

 



From the 13th District Court

Navarro County, Texas

Trial Court No. 30746-CR

 



MEMORANDUM  Opinion










 

            Kandance Yancy Marriott was convicted by a jury for the offense of
engaging in organized criminal activity.  See Tex. Pen. Code Ann. § 72.01 (Vernon 2003).  Based on the
jury’s verdict, the trial court assessed Marriott’s punishment at imprisonment
for ninety-nine (99) years in the Texas Department of Criminal Justice –
Institutional Division and a fine of $10,000.00.  See Tex. Pen. Code Ann. § 12.32 (Vernon
2003).  Marriott  complains that the trial court erred by amending her
indictment, that the trial court improperly commented on the weight of the
evidence through the introduction of evidence, that the trial court erred by
denying a requested instruction on Marriott’s failure to testify during
sentencing, that the trial court abused its discretion in admitting evidence of
extraneous acts, that the trial court erred in refusing an instruction in the
charge regarding comments by the trial court during trial, and that the trial
court erred by overruling Marriott’s objections to the improper jury argument
by the State.  Because we find that the trial court’s failure to include a
no-adverse-inference instruction regarding Marriott’s failure to testify at the
punishment phase of her trial was erroneous and harmful to Marriott, we reverse
and remand for a new trial on punishment only.  We affirm the judgment of guilt
in all other respects.

            We will discuss Marriott’s issues in
the order in which they arose during the pendency of the proceedings: 
pre-trial, guilt-innocence phase of the trial, and the punishment phase of the
trial.

Pre-Trial Rulings

Error in Indictment

Marriott complains that the trial court erred by
overruling her objection to the State’s motion to amend the indictment to
correct an error in the wording of the indictment.  The indictment alleged that
Darrell Lynn Marriott was the defendant, and then listed Darrell Lynn Marriott
as a member of the combination.  Darrell Lynn Marriott was the spouse of
Kandance Yancy Marriott and was indicted at the same time for the same
offenses.  The State filed a motion to amend the indictment to ask the trial
court to correct the listed name of the defendant, to which Marriott objected. 
The trial court granted the State’s motion and interlineated Marriott’s name in
place of Darrell Lynn Marriott.  

Marriott contends that the indictment was void
because it did not charge “a person” with the commission of an offense.  See
Tex. Const. Art. V, § 12(b). 
See also Tex. Const. Art.
I, Sec. 10.  We disagree.  It is apparent from the face of the indictment that
“a person” was charged with the offenses.  The purpose of naming the accused in
the indictment is for identification, which is “a matter of form which can
easily be altered at the election of the accused.”  Jones v. State, 504
S.W.2d 442, 444 (Tex. Crim. App. 1974); see also Tex. Code Crim. Proc. Ann. art. 26.08 (Vernon 2009).  The act
of changing the name of the defendant is a ministerial act.  See Jones,
504 S.W.2d at 442.  Further, changing the defendant’s name is not an amendment
to the indictment for purposes of article 28.10 of the Code of Criminal
Procedure.  See Kelley v. State, 823 S.W.2d 300, 302 (Tex. Crim. App.
1992); see also Wynn v.
State, 864 S.W.2d 539, 541 (Tex.
Crim. App. 1993).

Further, the time for Marriott to have notified
the trial court of a defect in her name as stated in the indictment was at
arraignment.  Bowden v. State, 628 S.W.2d 782, 787 (Tex. Crim. App.
1982).  An arraignment takes place for the purpose of fixing a defendant’s
identity and hearing her plea.  Tex.
Code Crim. Proc. Ann. art. 26.02 (Vernon 2009).  Marriott had appeared
for arraignment, stated that she understood the charges against her, and raised
no objection to the wrong name being listed in the indictment approximately two
years before the State’s motion to amend the indictment was filed.  Had she made
such a complaint, article 26.07 directly addresses errors in the name of a
criminal defendant:

When the defendant is arraigned, h[er] name, as
stated in the indictment, shall be distinctly called; and unless [s]he suggest
by h[er]self or counsel that [s]he is not indicted by h[er] true name, it shall
be taken that h[er] name is truly set forth, and [s]he shall not thereafter be
allowed to deny the same by way of defense. 

 

Tex. Code Crim. Proc. Ann. art. 26.07 (Vernon 2009).  A criminal
defendant who wishes to have an indictment amended to reflect her true name may
do so:

If the defendant, or h[er] counsel for h[er],
suggests that [s]he bears some name different from that stated in the
indictment, the same shall be noted upon the minutes of the court, the indictment
corrected by inserting therein the name of the defendant as suggested by
h[er]self or his counsel for h[er], the style of the case changed so as to give
h[er] true name, and the cause proceed as if the true name had been first
recited in the indictment.

 

Tex. Code Crim. Proc. Ann. art. 26.08 (Vernon 2009).  Thus, if an
indictment contains an error in the defendant’s name, it is the defendant’s
duty to call this error to the attention of the trial court at the time of
arraignment.  If she fails to do so, she has waived the error and cannot later
use it as a defense.  See Bowden, 628 S.W.2d at 787.  Appellant failed
to notify the trial court at her arraignment that she is not Darrell Lynn
Marriott, but is in fact Kandance Yancy Marriott.  Thus, she waived this error
in the indictment and she cannot raise it on appeal.  See Jackson v. State,
05-01-01840-CR, 2002 Tex. App. LEXIS 8369 at *8 (Tex. App.—Dallas Nov. 26,
2002, no pet.) (not designated for publication) (objection waived even though
defendant’s brother was named as the defendant in indictment).  Appellant’s
issue number one is overruled.

Guilt-Innocence Issues

Statement of Facts—Guilt/Innocence

            Marriott and her husband, Lynn, were
engaged in the business of selling manufactured homes and land in a business
called One-Way Home and Land.  Lynn and David Martin became partners, with
Martin providing financial backing on several projects, including One-Way. 
Their oral agreement was that Martin would provide the money and Lynn would provide the labor for whatever was needed for each project.  At each sale,
Martin would first recover his investment and then any profits were to be split
equally between Martin and Lynn.  

            Martin and Lynn purchased a vacant
former Burger King restaurant building to refurbish and convert to a Dickey’s
Barbecue restaurant in Navarro County.  Martin provided the capital for the
purchase and other amounts when and as requested by Lynn prior to August of
2004.  They also were working to open a Huddle House restaurant together under
the same terms.  Martin and Lynn also entered into several other real estate
purchases.  

            Martin discovered in August of 2004
that he had not been paid on some closings through One-Way.  He was given
spreadsheets from One-Way’s bookkeeper and seized many of their records.  The
spreadsheet given to him in early August was different from the spreadsheet he
received later in August.  Martin ultimately discovered eighteen checks issued
by title companies in his name that he did not receive.  These checks formed
the basis of the underlying offense alleged in the indictment, misapplication
of fiduciary property.  See Tex.
Pen. Code Ann. § 32.45 (Vernon 2003).  

The checks contained forged endorsements and were
deposited into various accounts, including One-Way, the Dickey’s restaurant
account, and the Huddle House account.  Martin was an authorized signer on the
Huddle House account but had no access to it, and was not an authorized signer
on any of the other accounts into which the checks were deposited.  Martin
denied giving anyone authority to sign his name or to deposit those funds into
those accounts.  The checks were dated and deposited from October of 2003
through August of 2004.  Martin testified that when he confronted Marriott and
Lynn, Marriott stated that Martin had told them that they could take the money
and deposit it elsewhere.

Marriott testified that Lynn would give her the
checks and that she would deposit them wherever he told her to.  She denied
ever forging Martin’s name on the checks, but did admit to writing “For deposit
only” and the account number below the signature on the back of the check,
which was already on there when Lynn gave her each check.  She also admitted to
filling out some of the deposit slips to the various accounts.  She denied
being in charge of the businesses and portrayed herself as an unknowing victim
who only did what her husband told her to.  She also minimized her involvement
in Dickey’s and the Huddle House.  She was not an authorized signer on either
the Dickey’s or the Huddle House bank accounts.

During the operation of One-Way, Marriott and her
employees would take whatever steps were necessary to ensure that potential
buyers could qualify for loans.  This included creating or altering official
documents, forging signatures, falsifying social security income letters,
falsely verifying employment and rental qualifications, paying off creditors
for buyers, creating bank accounts with the buyer’s name prior to closing, and
forging the buyers’ signatures on documents, all allegedly taught, required,
and sometimes personally accomplished by Marriott.  These activities resulted
in many buyers who would not have otherwise qualified for loans being
approved.  Linda Howard, a former employee of One-Way, testified that every
employee of One-Way, including herself, participated in these activities with
Marriott.  Lynn’s involvement in the mortgage fraud was less clear, although
Marriott testified that her husband was the one directing where those checks
went.  

Admission of Temporary Injunction

            Marriott complains that the trial
court erred by admitting a copy of a temporary injunction signed by the trial
court in a civil proceeding between the parties relating to Martin’s
allegations of theft and fraud because it constituted an impermissible comment
on the weight of the evidence by the trial court.  Specifically, she contends
that the admission of the documents violated rule 605 of the Rules of Evidence,
and article 38.05 of the Code of Criminal Procedure.  

Texas Rule of Evidence 605 states that “the judge presiding at the trial may not testify in that
trial as a witness.”  Tex. R. Evid.
605.  Article 38.05 of the Code of Criminal Procedure provides that in ruling
on admissibility of evidence, the trial court shall not discuss or comment on
the weight of the evidence, or “make any remark calculated to convey to the
jury his opinion of the case.”  Texas Code of Criminal Procedure Ann. art.
38.05 (Vernon 1979).  A trial court improperly comments on the weight of the
evidence if it makes a statement that implies approval of the State’s argument,
indicates disbelief in the defendant’s position, or diminishes the credibility
of the defense’s approach to the case.  Simon v. State, 203 S.W.3d 581,
590 (Tex. App.—Houston [14th Dist.] 2006, no pet.).

A violation of rule 605 occurs when a judge makes
a statement of fact that is “the functional equivalent of witness testimony.”  Hammond v. State, 799 S.W.2d 741, 746 (Tex. Crim. App. 1990).  A judge’s
findings of fact are not technically the same as testimony.  In re M.S.,
115 S.W.3d 534, 538 (Tex. 2003).  “Our statutes, court-made rules, and judicial
decisions emphatically and repeatedly prohibit Texas judges from commenting on
the weight of the evidence.”  In re T.T. & K.T., 39 S.W.3d 355, 359
(Tex. App.—Houston [1st Dist.] 2001, no pet.) (citing Tex. Code Crim. Proc. Ann. art. 36.14, Tex. R. Civ. P. 277, and Blue v.
State, 41 S.W.3d 129, 132 (Tex. Crim. App. 2000)).  

The Honorable Robert G. Dohoney was assigned to
hear both the civil case between Marriott, Lynn, and Martin and the criminal
cases of Marriott and Lynn.  An order was signed by Judge Dohoney during the
civil case that granted a temporary injunction against Marriott and Lynn in
favor of Martin, and contained specific findings regarding fraud perpetrated
against Martin by Marriott.  These specific allegations related to evidence
introduced during the trial regarding these fraudulent acts.  It is true that
Judge Dohoney did not “step down from the bench” and become a witness in the
very same proceeding over which he was currently presiding.  See Hensarling
v. State, 829 S.W.2d 168, 170 (Tex. Crim. App. 1992).

However, the findings contained in the temporary
injunction in the civil case made by the same judge presiding over the criminal
trial were intertwined with the jury’s ultimate decision as to the existence of
the combination, whether it was carrying on criminal activities, and whether or
not Martin had been stolen from by Marriott.  The temporary injunction, as
admitted, contained findings of fact that certainly could convey to the jury
his opinion of the case.  We find that the trial court abused its discretion in
the admission of the temporary injunction.

Harm Analysis

Having found error, we must address whether or not
the error was harmful.  When determining harm from a non-constitutional error,
we must disregard the error unless it affects Marriott’s substantial rights.  Tex. R. App. P. 44.2(b).  A substantial
right is affected when the error had a substantial and injurious effect or
influence in determining the jury’s verdict.  King v. State, 953 S.W.2d
266, 271 (Tex. Crim. App. 1997).  Substantial rights are not affected by the
erroneous admission of evidence “if the appellate court, after examining the
record as a whole, has fair assurance that the error did not influence the
jury, or had but a slight effect.”  Motilla v. State, 78 S.W.3d 352, 355
(Tex. Crim. App. 2002).  

In conducting the harm analysis, we consider
everything in the record, including any testimony or physical evidence admitted
for the jury’s consideration, the trial court’s instructions to the jury, the
State’s theory, any defensive theories, closing arguments, and even voir dire
if material to Marriott’s claim.  Motilla, 78 S.W.3d at 355-56; Morales
v. State, 32 S.W.3d 862, 867 (Tex. Crim. App. 2000).  In assessing harm,
the factors to be considered are the nature of the evidence supporting the
verdict, the character of the alleged error, and how the evidence might be
considered in connection with the other evidence in the case.  Motilla,
78 S.W.3d at 355; Morales, 32 S.W.3d at 867.  Whether the error was
compounded or emphasized also can be a factor.  See e.g., Motilla,
78 S.W.3d at 356.  We ask if a reasonable probability exists that the error
moved the jury from a state of non-persuasion to one of persuasion beyond a
reasonable doubt.  Wesbrook, 29 S.W.3d 103, 119 (Tex. Crim. App. 2000). 
The existence of substantial evidence of Marriott’s guilt may be the most
significant factor in this harm analysis.  Id. at 359.

The temporary injunction was offered and admitted
during the testimony of the victim.  Martin’s testimony did not disclose the
identity of the trial judge, nor did he discuss the findings made by the trial
court in that order other than to state that he got what he wanted from the
proceeding, which was his property, and that the injunction led to a settlement
of the case between the parties.  

During cross-examination, Marriott was questioned
regarding the findings in the injunction that the trial court had found that
either Marriott or someone under her control had forged documents.  However, no
mention was made that Judge Dohoney had signed the temporary injunction or been
involved in the civil action at all.  There is nothing in the record to
indicate that the exhibit was published to the jury or that the exhibits were
taken to the jury room during deliberations.  The State made reference to
Marriott’s ongoing criminal activities while she was under the supervision of a
court relating to the diversion of funds at closing to pay creditors of One-Way
because her bank accounts had been frozen by Martin through the civil suit in
its cross-examination of Marriott.  The State also questioned Marriott about a
forged foreign judgment that was alleged to have been part of a fraud
perpetrated against Martin while they were “under the control of the Court.”  

The overwhelming evidence was that Marriott was
the individual in charge of the businesses and that everything went through her
from the checks to instructions on how funds at closing were to be disbursed to
the multitude of fraudulent acts perpetrated by the employees of One-Way and
her husband.  After examining the record as a whole, we have fair assurance
that the error did not influence the jury, or had but a slight effect.  See
Motilla, 78 S.W.3d at 355.  We overrule issue two.  

Extraneous Offenses

Marriott complains that the trial court erred by
admitting evidence of multiple extraneous offenses during the guilt-innocence
phase of the trial.  We review the admission of evidence under an abuse of
discretion standard.  Casey v. State, 215 S.W.3d 870, 879 (Tex. Crim. App. 2007).  A trial court abuses its discretion if its ruling is outside the
zone of reasonable disagreement.  Id.

The State contends that most, if not all, of the
challenged evidence was not evidence of extraneous offenses, but was evidence
of the combination.  Alternatively, the State argues that the evidence was
admissible as same-transaction contextual evidence or for the reasons specifically
enumerated in rule 404(b).  We must first, then, determine whether or not they
were extraneous offenses at all.

Engaging in Organized Criminal Activity

A person engages in organized criminal activity
“if, with the intent to establish, maintain, or participate in a combination or
in the profits of a combination, . . . [s]he commits” one of several enumerated
offenses, including misapplication of fiduciary property.  Tex. Pen. Code Ann. § 71.02(a)(8)
(Vernon 2003).  The State has the burden of proving the combination.  Hart
v. State, 89 S.W.3d 61, 63 (Tex. Crim. App. 2002).  A “combination”
requires three or more people who collaborate in carrying on criminal
activities.  Tex. Pen. Code Ann.
§ 71.01(a) (Vernon 2003).  The State must prove (1) that the defendant intended
to establish, maintain, participate in, or participate in the profits of a
combination, and (2) that the members of the combination intended to work
together in a continuing course of criminal activity.  Hart, 89 S.W.3d
at 63; Dowdle v. State, 11 S.W.3d 233, 236 (Tex. Crim. App. 2000). 
There must be evidence of an agreement to act together in a continuing course
of criminal activity.  Nguyen v. State, 1 S.W.3d 694, 697 (Tex. Crim.
App. 1999).  Similar methods of operation, together with joint activities and
relationships, support the finding of a single conspiracy.  McGee v. State,
909 S.W.2d 516, 518 (Tex. App.—Tyler 1995, pet. ref'd).  A
jury may infer criminal intent from any facts that tend to prove its existence,
including the acts, words, and conduct of the accused, and the method of
committing the crime.  Manrique v. State, 994 S.W.2d 640, 649 (Tex.
Crim. App. 1999).

Rules of Evidence 404(b) and 403

Under Texas Rule of Evidence 404(b), evidence of
other crimes, wrongs, or acts is not admissible “to prove the character of a
person in order to show action in conformity therewith.”  Tex. R. Evid. 404(b).  However, it may
be admissible for other purposes, “such as proof of motive, opportunity,
intent, preparation, plan, knowledge, identity, or absence of mistake or
accident.”  De La Paz v. State, 279 S.W.3d 336, 342-43 (Tex. Crim. App. 2009).  The rule excludes only that evidence that is offered solely for the
purpose of proving bad character and conduct in conformity with that character. 
Id at 343.  In addition, evidence admissible under rule 404(b) may
nonetheless be excluded if the trial judge determines that its
probative value is substantially outweighed by the danger of unfair
prejudice.  Tex. R. Evid. 403; Mozon
v. State, 991 S.W.2d 841, 846-47 (Tex. Crim. App. 1999).

Same Transaction Contextual Evidence

An exception to rule 404(b) exists in that
extraneous offenses may be admissible as same transaction contextual evidence
when “several crimes are intermixed, or blended with one another, or connected
so that they form an indivisible criminal transaction.”  Prible v. State,
175 S.W.3d 724, 731-32 (Tex. Crim. App. 2005) (quoting Rogers v. State,
853 S.W.2d 29, 33 (Tex. Crim. App. 1993)).  This type of evidence results when
an extraneous matter is so intertwined with the State’s proof of the charged
crime that avoiding reference to it would make the State’s case difficult to
understand or incomplete.  Prible, 175 S.W.3d at 732.  

Letterhead

            Marriott complains of the admission of
two exhibits that purported to show letterhead created by Marriott and the
forged signature of Martin.  In its case-in-chief, the State sought to
introduce documentary evidence of letterhead allegedly created and forged by
defendant using the victim’s name and law firm name.  According to one witness,
the letterhead was used for the purpose of sending letters to creditors and
credit reporting agencies to clear up the credit reports of potential buyers.  

The Midas Group

            Marriott complains of the admission of testimony during the State’s
case-in-chief by her sister Kathryn Davis regarding the establishment of a
corporation in Kathryn’s name with a forged signature and without her knowledge
or consent.  Marriott and Kathryn’s sister, Karen Hayes, had suggested the name
of Midas Group to Kathryn when Kathryn was becoming part of a legal pyramid
scheme to sell electricity.  Unbeknownst to Kathryn, Lynn had used an entity
called the Midas Financial Group on a real estate transaction in December of
2004.  Further, at a real estate closing in 2005, $12,900 was wired to an
account created for the Midas Group, which Kathryn controlled.  This money was
diverted to the Midas Group because Martin had taken control of all of the
assets of the business, including the bank accounts.  Marriott arranged for the
money to be sent to her sister through the Midas Group by the title company,
which then was disbursed to Marriott and her sister Karen Hayes in several
installments shortly after the closing.  

Mortgage Fraud

            Marriott complains of the introduction of multiple extraneous
offenses offered by the State through the testimony of Linda Howard, a former
employee of One-Way.  Howard was called to testify in the rebuttal phase of the
trial by the State.  Howard testified to Marriott’s knowledge, participation,
and sponsorship of a course of conduct relating to defrauding mortgage
companies and the federal government.  The allegations of which Marriott
complains are (1) that Marriott gave Howard $1,500 to open a bank account for a
prospective buyer so that they could state that the buyer had a bank account,
and then they removed the buyer’s name from the account after closing; (2)
manufacturing documents for mortgage fraud; (3) routinely forging social
security letters, check stubs, verifications of rent, divorce decrees,
satisfaction of debt judgments; (4) false verifications of rent and employment,
which allowed buyers to obtain fraudulent mortgages; (5) creation of false
credit reports; (6) generation of letters to credit reporting agencies using
Martin’s letterhead to improve credit scores; (7) forging buyers’ signatures on
credit documents using a “cut and paste” method; (8) paying off delinquent
accounts for potential buyers using Marriott’s money to improve their credit
scores; (9) forging signatures by tracing; (10) a mortgage broker confronting
Marriott about fraud, who stated she fired an employee over the incident; (11)
manufacturing false social security income letters; and (12) paying people to
be false employers to give false employment information to mortgage companies. 
Howard testified that Marriott knew of and directed these activities.

Analysis

            The State contends that the letterhead provides some evidence of the
existence of the combination.  We agree.  We note that the language of the
indictment did not define the criminal activities of the combination, which was
comprised of Marriott, her husband, Mary Putnam, Debbie Grace, Katherine Davis,
Karen Hayes, and unnamed other individuals.  Mary Putnam and Debbie Grace were
employees of One-Way.  Karen Hayes ran another business in Henderson County, but the contracts on those sales listed One-Way as the seller.  The
combination’s criminal activities included Marriott and her employees
falsifying whatever was necessary to ensure that buyers qualified for
mortgages.  The letterhead was admissible to assist in proving the existence
and ongoing criminal activities of a combination beyond a reasonable doubt and
was not an extraneous offense pursuant to rule 404(b), but went to prove an
element of the offense of engaging in organized criminal activity.

            Further, the evidence elicited from
Linda Howard regarding the ongoing mortgage fraud in response to Marriott’s own
testimony was also admissible as evidence of the combination and the knowledge
and intent as to the members of the combination to engage in ongoing criminal
activities that began before and ended after the misappropriation of the 18
checks.  Further, the testimony established that there were multiple employees,
as well as Marriott, that were involved in the combination, and the State had
to prove that there were at least three members of the combination.  These were
not extraneous offenses, but were evidence to establish the existence of the
combination, its members, and its ongoing criminal activities, which are
elements of the offense.

            The forged signature on the articles
of incorporation of the Midas Group and the use of the Midas Group name on a
real estate transaction by Lynn Marriott provide some evidence of the ongoing
criminal activities of the combination and that Karen was involved in the
combination with Marriott and Lynn.  The money taken from the closing in 2005,
diverted to the Midas Group, and disbursed to Marriott and Hayes by Davis is also evidence that both Marriott and Karen were continuing the ongoing criminal
activity of the combination.  

            However, to the extent that the money
diverted to the Midas Group after the closing is an extraneous offense, if it
was, it was admissible under rule 404(b) as evidence of motive, knowledge and
intent, common scheme or plan, or absence of mistake.  See Tex. R. Evid. 404(b). 

Further, we find that the probative value of each
act referred to in the trial was not substantially outweighed by any
prejudicial effect.  See Tex. R.
Evid. 403.  We find that the trial court did not abuse its discretion. 
We overrule issue four.

Charge Error—Denial of Instruction

            Marriott complains that the trial
court erred by denying her request to include an instruction in the charge on
guilt-innocence that the jury not consider any comment by the trial court to
express the trial court’s opinion as to an ultimate issue to be determined by
the jury.  This request arose from an objection to the temporary injunction
admitted into evidence that had been signed by the trial court.  Marriott
objected again to the admission of that exhibit during the charge conference in
the guilt-innocence phase.  The trial court included a limiting instruction
regarding that exhibit, that it was admitted for the limited purpose of
demonstrating how a settlement was reached in the civil case and instructing
the jury that the findings and rulings contained in the injunction were not to
be considered as evidence of guilt, which is not an impermissible comment on
the weight of the evidence.  See Bartlett v. State, 270 S.W.3d 147, 151
(Tex. Crim. App. 2008).

            Marriott provides no authorities
demonstrating her entitlement to the requested instruction, nor does she
suggest how the denial of the instruction was harmful to her.  As such, this
issue is inadequately briefed, and therefore, is waived.  Tex. R. App. P. 38.1(h).  We overrule
issue five.

Improper Jury Argument

            Marriott complains in issues six and
seven that the trial court erred by overruling two objections to the State’s
closing argument.  In issue six, Marriott complains that the State’s comparison
of Marriott to Bernie Madoff and Allen Stanford was outside of the evidence and
improper.  In issue seven, Marriott complains that the State’s argument that
Marriott made $75,000 per year defrauding the government, buyers, and David
Martin was a misstatement of the evidence and not a reasonable deduction from
the evidence.  

Proper jury argument generally falls within one of
four general areas: (1) summation of the evidence; (2) reasonable deduction
from the evidence; (3) answer to argument of opposing counsel; and (4) plea for
law enforcement.  Brown v. State, 270 S.W.3d 564, 570 (Tex. Crim. App.
2008) (citing Alejandro v. State, 493 S.W.2d 230, 231 (Tex. Crim. App.
1973)). 

Comparison to Madoff and Stanford 

During the State’s closing argument in the
guilt-innocence phase of the trial, the prosecutor stated:  “It’s easy to see
how somebody like Bernie Madoff or Allen Stanford or the Marriotts do this.” 
Marriott objected to the comment being outside of the record, which the trial
court overruled.  The State then followed with “That’s how they do it.”  

“It is the duty of trial counsel to confine their
arguments to the record; reference to facts that are neither in evidence nor
inferable from the evidence is therefore improper.”  Brown, 270 S.W.3d
at 570 (internal citations omitted).  “The arguments that go beyond these areas
too often place before the jury unsworn, and most times believable, testimony
of the attorney.”  Alejandro, 493 S.W.2d at 231.  Consequently, error
exists when facts not supported by the record are interjected in the argument,
but such error is not reversible unless, in light of the record, the argument
is extreme or manifestly improper.  Brown, 270 S.W.3d at 570.

The State’s comments do not fall within any of the
parameters set forth by the Court of Criminal Appeals.  The comparison of the
Marriotts to Madoff and Stanford is not unlike comparing defendants to other
notorious criminals.  See Brown v. State, 978 S.W.2d 708, 714 (Tex. App.—Amarillo 1998, pet. ref’d) (comparing defendant to Jeffrey Dahmer, John Wayne
Gacy, and Ted Bundy improper); Massey v. State, No. 04-99-00040-CR, 1999
Tex. App. LEXIS 7372 at *9 (Tex. App.—San Antonio 1999, pet. ref’d) (comparison
to Killeen Luby’s shooting and New York subway shooting erroneous); Gonzalez
v. State, 115 S.W.3d 278, 284-85 (Tex. App.—San Antonio 2003) (comparison
between defendant and Osama Bin Laden and Al Qaida improper); Stell v. State,
711 S.W.2d 746, 748 (Tex. App.—Corpus Christi 1986, no pet.) (comparison to Lee
Harvey Oswald improper).  These types of arguments that reference matters that
are not in evidence and may not be inferred from the evidence are usually,
“designed to arouse the passion and prejudices of the jury and as such are
highly inappropriate.”  Borjan v. State, 787 S.W.2d 53, 57 (Tex. Crim.
App. 1990).  In examining challenges to jury argument, we consider the remark
in the context in which it appears.  Gaddis v. State, 753 S.W.2d 396,
396 (Tex. Crim. App. 1988).  We find that the argument by the State was
improper.

Harm Analysis

We will analyze the alleged harm under rule 44.2(b), which requires that we disregard any error not
affecting substantial rights.  Tex. R.
App. P. 44.2(b).  Additionally, since we have determined that the
State’s comments were improper jury argument, the trial court’s erroneous
overruling of Marriott’s objection is also not reversible error unless it
affected Marriott’s substantial rights.  Tex. R. App. P. 44.2(b); Martinez v.
State, 17 S.W.3d 677, 692-93 (Tex. Crim. App. 2000); Mosley v. State,
983 S.W.2d 249, 259 (Tex. Crim. App. 1998) (op. on reh'g).

 When analyzing the harm caused by an
improper jury argument, we examine the following factors: (1) severity of the misconduct
(the magnitude of the prejudicial effect of the prosecutor’s remarks), (2)
measures adopted to cure the misconduct (the efficacy of any cautionary
instruction by the judge), and (3) the certainty of conviction absent the
misconduct (the strength of the evidence supporting the conviction).  Ramon
v. State, 159 S.W.3d 927, 929 (Tex. Crim. App. 2004) (citing Mosley v.
State, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998)).

In evaluating the first factor, the severity of
the misconduct, we must consider “whether [the] jury argument is extreme or
manifestly improper [by] look[ing] at the entire record of final arguments to
determine if there was a willful and calculated effort on the part of the State
to deprive appellant of a fair and impartial trial.”  Cantu v. State,
939 S.W.2d 627, 633 (Tex. Crim. App. 1997).  Viewing the State’s argument as a
whole and after a review of the record, we must question whether the State’s
argument was made in a willful or calculated effort to deprive Marriott of a
fair and impartial trial.  See Brown, 270 S.W.3d at 573; Cantu,
939 S.W.2d at 633.  On this record, we cannot reach that conclusion.

Regarding the second factor, the trial court
adopted no curative measures because it overruled the objection by Marriott. 
Finally, in analyzing the third factor, we must determine the likelihood of
conviction absent the improper argument.  See Mosley, 983 S.W.2d at
693.  We find that there was a strong likelihood of conviction without the
improper argument.  We find the State’s improper argument and the trial court’s
failure to sustain the objection to that argument to be harmless.  We overrule
issue six.

The $75,000 Comment

Marriott complains that the trial court erred by
overruling her objection to the State’s argument in the guilt-innocence phase
of the trial that she received $75,000 a year “defrauding the government,
defrauding the buyers, and defrauding David Martin…”  However, Marriott had
testified that she and her husband received over $6,700 per month from
One-Way.  There was evidence that Marriott had indeed defrauded the government,
multiple buyers, and Martin through the pattern of mortgage fraud perpetrated
by Marriott and by the other alleged members of the combination.  This argument
was made in the rebuttal portion of the argument in response to Marriott’s
contention that she did not profit from the misapplication of the checks, and
was a reasonable inference from the evidence.  The trial court did not err in
overruling the objection because the State’s argument regarding Marriott’s
profits from the combination was not improper.  We overrule issue seven.

Punishment Phase Issue

Charge Error—Failure to Testify

            Marriott complains that the trial court erred by failing to include
an instruction requested by Marriott regarding her failure to testify in the
punishment phase of her trial.  The State prepared the charge on punishment,
which did not contain an instruction or reference of any kind to Marriott’s
failure to testify.  After Marriott objected to the lack of an instruction, the
State did not respond, and the trial court overruled the objection.  Although
she had testified during the guilt-innocence phase of the trial, Marriott did
not testify during the punishment phase of her trial.

Statement of Facts—Punishment Phase  

The State’s case on punishment lasted for two
days.  During the punishment phase, the State called multiple witnesses who
gave further testimony regarding extraneous offenses, some of which were
brought out in the guilt-innocence phase, but many were not.  These extraneous
offenses bore little relation to Martin and the misappropriated checks, but
expounded at length upon Marriott’s extensive history in mortgage fraud with
multiple victims, multiple employees, and taking place in multiple counties,
even after Marriott’s arrest for this offense.  Marriott presented seven
witnesses on her behalf as well relating to her good character, charitable
works, and candidacy for probation.  The State did not directly reference her
failure to testify in the punishment phase, but did refer to her prior
testimony in the guilt-innocence phase in its closing argument in the
punishment phase, including a claim that she had committed aggravated perjury
with that prior testimony.  

No-Adverse-Inference Instruction

Upon a defendant’s request, the trial court must
instruct jurors that they may not draw any adverse inference from a defendant’s
failure to testify at the punishment phase.  Beathard v. State, 767
S.W.2d 423, 432 (Tex. Crim. App. 1989).  A criminal defendant cannot be compelled
to be a witness against herself.  U.S. Const. Amend. V, cl. 3.  The Fifth
Amendment attempts to secure the right of a criminal defendant to elect not to
testify and to prohibit the State from exacting a price for exercising that
right.  Griffin v. California, 380 U.S. 609, 614, 85 S. Ct. 1229, 1232-33, 14 L. Ed. 2d 106 (1965).  The omission of a no-adverse-inference
punishment instruction attaches such a price to the exercise of the privilege
because “the members of a jury, unless instructed otherwise, may well draw
adverse inferences from a defendant’s silence.”  Carter v. Kentucky, 450
 U.S. 288, 301, 101 S. Ct. 1112, 1119, 67 L. Ed. 2d 241 (1981).

Marriott’s right not to testify continued after
her conviction until after she was sentenced.  Beathard v. State, 767
S.W.2d 423, 432 (Tex. Crim. App. 1989); Brown v. State, 617 S.W.2d 234,
236-37 (Tex. Crim. App. 1981).  Further, as the State now concedes, Marriott
had a right to a no-adverse-inference instruction, which concerns the fact that
she elected not to testify, at the punishment stage of the trial.  White v.
State, 779 S.W.2d 809, 828 (Tex. Crim. App. 1989); Beathard, 767
S.W.2d at 432; Brown, 617 S.W.2d at 238.  The trial court’s denial of
the instruction was erroneous.

Harm Analysis

Finding error, we must now determine whether such
error is reversible.  We will reverse upon a finding of error, unless we
determine beyond a reasonable doubt that the error did not contribute to
Marriott’s punishment.  Tex. R. App. P.
44.2 (a).  Since this is a case of charging error with a timely objection, we
will reverse only if the error was calculated to injure the rights of Marriott,
i.e., there must be some harm to her from the error.  See White,
779 S.W.2d at 828, citing Almanza v. State, 686 S.W.2d 157 (Tex. Crim.
App. 1985) (op. on reh’g); Ulloa v. State, 901 S.W.2d 507, 512 (Tex.
App.—El Paso 1995, pet. ref’d); De La Paz v. State, 901 S.W.2d 571, 580
(Tex. App.—El Paso 1995, pet. ref’d).  

Rule 44.2(a) requires us to focus on whether the
error might have prejudiced the jurors’ decision-making, not on the weight of
other evidence of guilt.  See Harris v. State, 790 S.W.2d 568, 587-88
(Tex. Crim. App. 1989).  We must examine the source of the error, the nature of
the error, whether or to what extent it was emphasized by the State, and its
probable collateral implications.  Id. at 587.  Further, we must also
determine whether declaring the error harmless would encourage the State to
commit the error again with impunity.  Id.; see Ulloa, 901 S.W.2d
at 514.

In other situations where courts have found the
failure to include a no-adverse-inference instruction to be harmless, generally
there was nothing additional for the defendant to refute in the punishment
phase of the trial.  See Beathard v. State, 767 S.W.2d 423, 432-33 (Tex.
Crim. App. 1989) (error harmless when State introduced no evidence at
punishment phase; defendant would not need to counter factual assertions made
by the State); Martinez v. State, No. 04-98-00154-CR, 1999 Tex. App. LEXIS 5343 at *4 (Tex. App.—San Antonio 1999, no pet.) (not designated for
publication) (error harmless when no evidence to rebut introduced by State
during punishment phase); but see White v. State, 779 S.W.2d 809 (Tex.
Crim. App. 1989) (absence of instruction harmless because evidence at
guilt-innocence and punishment demonstrated defendant had murdered and robbed
another elderly woman, had a reputation for violence, and defendant called no
witnesses at punishment; lack of instruction was not “calculated to injure the
rights of the defendant”). 

Cases where the error was found to be harmful
largely involve a potential expectation from the jury to refute some evidence
presented in the punishment phase of the trial.  See Durham v.
State, 153 S.W.3d 289, 293 (Tex. App.—Beaumont 2004, no pet.) (error
harmful when the State argued probation system flawed and defendant’s witness
made assurances as to defendant’s ability to complete probation coupled with
sixty year sentence and no prior convictions); Ruiz v. State, No.
08-01-00287-CR, 2003 Tex. App. LEXIS 2365 at *11 (Tex. App.—San Antonio 2003,
no pet.) (not designated for publication)  (error harmful when State argued
against probation unless defendant admits guilt and implied defendant had
smuggled drugs previously); Ulloa v. State, 901 S.W.2d 507, 513-14 (Tex.
App.—El Paso 1995, pet. ref’d) (error harmful when crime was nonviolent and
defendant called several witnesses to testify to his good character, which
raised expectation that defendant would express like sentiments and State likely
to repeat error); De La Paz v. State, 901 S.W.2d 571, 581-82 (Tex.
App.—El Paso 1995, pet. ref’d) (same).

The length of the sentence given by the jury is
not, in and of itself, dispositive of the issue of harm.  Accord White,
779 S.W.2d at 828 (defendant sentenced to death); Castaneda v. State,
852 S.W.2d 291, 296 (Tex. App.—San Antonio 1993, no pet.).  However, in the
cases where reversible error was found, the fact that the defendant received
more than the minimum sentence was considered in the harm analysis.

While we agree with the State that the evidence
supporting the sentence assessed by the jury was strong, we cannot say beyond a
reasonable doubt that the failure of the trial court to properly instruct the
jury regarding Marriott’s invocation of her constitutional right to remain
silent during the punishment phase did not contribute to her punishment.  The
jury may well have wondered why Marriott did not attempt to refute any of the
vast number of allegations against her in punishment, and we find, after much
deliberation, that the trial court’s refusal to aid the jury by including this
requested instruction was harmful to her.  We sustain issue three.

Conclusion      

            We find that Marriott waived any
complaint to errors in her name in the indictment.  We find that the error
relating to the admission of the temporary injunction was harmless.  We find
that the evidence complained of regarding extraneous offenses was not
extraneous but was evidence of an element of the offense, or if it was extraneous,
it was properly admitted.  We find that the complaint regarding the jury
instruction regarding comments made by the trial court to have been waived.  We
find that the comments regarding Madoff and Stanford in the State’s closing
argument in guilt-innocence was erroneous but harmless, and the comment
regarding Marriott’s profiting from her deeds was not erroneous.  We find that
the erroneous refusal of the trial court to include a no-adverse-inference
instruction relating to Marriott’s failure to testify in the punishment phase
of her trial was harmful.  We affirm the judgment of guilt but reverse and
remand the punishment phase for a new trial as to punishment only.

 

                                                                        TOM
GRAY

                                                                        Chief
Justice




Before Chief Justice
Gray,

            Justice
Reyna, and

            Justice Davis

            (Justice
Davis concurs without a separate opinion)

Affirmed in part; reversed
and remanded as to punishment only

Opinion delivered and
filed July 21, 2010

Do not publish

[CRPM]